Kaufman County v. W. L. McGaughey, Commissioner of the
General Land Office, and H. Y. Kinscy,
Surveyor of Hunt County.

### No. 702.

**1. Injunction Against Commissioner of General Land Office.—** Under the Constitution of this State, the District Court had jurisdiction to issue a writ of injunction against the Commissioner of the General Land Office in a proper case for such relief.

**2.  Same — Statute Construed. —** The statute passed February 15, 1881 (Sayles' Civil Statutes, article 3433a, section 4), prescribing, that " no court of this State shall have power  *  *  *  to issue the writ of mandamus or injunction  *  *  *  against any of the officers of the executive departments of the Government of this State, to compel the performance of any act or duty which by the laws of the State they or either of them are authorized to perform, whether such act or duty be judicial, ministerial, or discretionary," does not apply to acts committed or threatened without and in excess of lawful authority by such executive officer or officers.

**3. Executive and Judicial Powers. —** The fact that the Constitution divides the powers of the State Government into three distinct departments, and prohibits officers of one department from exercising any power properly attached to either of the others, does not support the proposition that the heads of the executive departments are placed beyond the control of the judiciary, when they themselves propose to exercise powers not attached to the executive department, and from the exercise of which harm would result. Interference in such instance by either habeas corpus or injunction is not an exercise by the judge of a power properly attached to the executive department. To prevent the assumption of authority which under the law does not exist, is not usurpation of such authority.

**4. Establishing Disputed County Boundaries.—**The petition alleged. that in 1882, in an effort to establish the line between Kaufman and Hunt Counties, and in conformity therewith, a disagreement between the surveyors representing said counties was duly certified to the Commissioner of the General Land Office of the State, and that he, in accordance with the statute, caused the line to be surveyed, marked, and established on the ground, and that no uncertainty exists as to its location as thus established. *Held,* upon such allegations grounds existed for restraining McGaughey as Land Commissioner at instance of Hunt County, from establishing another boundary line. By the action of his predecessor, all power in the officer was exhausted. Laws 16th Leg., chap. 129, p. 137, secs. 7, 8; Sayles' Civ. Stats., arts. 691a, 691b.

Error from Travis.    Tried below before Hon. James H. Robertson.

On the 8th day of January, 1892, plaintiff in error, Kaufman County, filed this suit in the District Court of Travis County against W. L. McGaughey, Commissioner of the General Land Office of the State of Texas; and H. Y. Kinscy, alleged to be the county surveyor of Hunt County, or else employed to act with or under defendant McGaughey.

The purpose of the suit was to obtain an injunction restraining defendants in error from re-establishing or attempting to re-establish the boundary line between Kaufman and Hunt Counties.

Among other things, it is charged in the plaintiff's petition, in substance:

1. That since 1850, the south boundary line of Hunt County and the north boundary line of Kaufman County have, in part, been one and the same; but that until the year 1882 said line had not been legally surveyed, fixed, and marked on the ground.

2. That in the year 1882, proper statutory proceedings were inaugurated to have said line definitely and finally fixed, marked, and established; that the necessary steps were taken; the surveyors of the two counties met on the ground, surveyed, but failed to agree upon a line as the true line between said counties; that their disagreement was duly certified to W. C. Walsh, Commissioner of the General Land Office, as required by law.

3. That said Walsh, Commissioner as aforesaid, after due consideration, caused said disputed line to be surveyed, fixed, and established; that the field notes of the line so run and established were approved by the Commissioners Court of Kaufman County; accepted, approved, and archived by the General Land Office as the boundary line between said counties.

4. That all parties at interest acquiesced in the boundary line so established by and under the directions of said Walsh, as Commissioner of the General Land Office, until October, 1891, when Hunt County, without authority of law, began to moot the question, whether or not the line so established was the true boundary line between said counties.

5. That in October, 1891, Hunt County instituted proceedings to again have the line between the two counties surveyed and established; that Kaufman County protested; that the surveyors again disagreed; that over the protest of Kaufman County said disagreement was certified to the defendant McGaughey.

6. That said McGaughey, as Commissioner of the General Land Office, has unlawfully assumed and attempted to take jurisdiction over the matter in controversy between said counties concerning said boundary line, and has issued an order, or official letter, to the county surveyors of each of said counties, directing them to run said line from a designated point, and in such a manner as will change the line established in 1882 by said Walsh, as Commissioner as aforesaid, and will run inside of Kaufman County a distance of from 2000 to 3000 varas.

7. That the line so established by Commissioner Walsh is well marked on the ground, and no uncertainty exists as to its exact locality; that the lands on the Kaufman County side of said line have been abstracted as situated in said county; that persons living in the disputed territory have voted in, performed road and jury service in and for, and paid their taxes in and to Kaufman County; and that by common acquiescence said Walsh line has been recognized and acted upon as the true boundary line

between said counties until the question was mooted by Hunt County in 1891.

8. That the plaintiff has no legal remedy, and that if not restrained by injunction, the defendants will unlawfully change the boundary line of Kaufman County, deprive it of a large number of good citizens, and also of the revenue it would otherwise derive from the levy and collection of county taxes on the property in the disputed territory.

9. That the threatened acts and purposes of the defendants, as alleged, will, if accomplished, breed confusion and uncertainty as to what is the true boundary line between said counties; render the enforcement of the laws, both civil and criminal, uncertain; engender controversies over questions of taxation; render uncertain the rights and duties of citizens in regard to voting, venue of suits, road and jury service, and other material rights and duties; and cause a multiplicity of law suits growing out of the various rights and liabilities of the citizens who reside in the disputed territory.

The petition asks for an injunction against defendants, restraining them from in anywise changing or disturbing the line between the two counties as established under Commissioner Walsh, etc.

The defendants' answer contained:

1. Exception in the nature of a suggestion that the District Court had no jurisdiction, because the suit was an application for an injunction against the head of one of the executive departments of the State; and therefore the court has no jurisdiction to issue or enforce a writ of injunction.

2. A general demurrer.

3. A general denial.

The court sustained the exception and demurrer, and dismissed the cause.

[Statement by the court.]

*Joseph Huffmaster* and *Walton, Hill & Walton*, for plaintiff in error. This is a bill for injunction, brought by plaintiff (appellant) against appellee to restrain him from certain acts as Commissioner, and also as an individual under color of official power, the act anticipated being ultra vires, and if performed would work much public mischief. To this petition the defendant applied general demurrer and special exceptions as to the power of the court to grant the relief prayed. The court sustained the exceptions. Plaintiff declined to amend, and the bill was dismissed. Notice of appeal was given, but the case is brought up by writ of error, and is here for review.

The court erred in sustaining demurrers and exceptions to plaintiff's bill of complaint, and dismissing the same, because the bill of complaint

set out a good cause of action, and the court had jurisdiction under the Constitution and laws of Texas to grant the relief, general and special, prayed for in plaintiff's bill.

The petition shows facts which call for relief as prayed if the court has jurisdiction to adjudicate and restrain on the matters presented, and against the parties complained of. If the court has no jurisdiction over McGaughey, then we admit it has none over the surveyor of Hunt County.

The petition shows:

(1) That original boundary lines were given Hunt and Kaufman counties by the Legislature in the acts creating them.

(2) These original lines were recognized and acquiesced in until the year 1882.

(3) In that year the boundary line in contest was complained of as not being sufficiently definite and well defined. 1 Sayles' Civ. Stats., art. 686.

(4) Notice was given. 1 Sayles' Civ. Stats., art. 689.

(5) Surveyors qualified. 1 Sayles' Civ. Stats., art. 690.

(6) Surveyors disagreed. 1 Sayles' Civ. Stats., art. 691a.

(7) The line was surveyed and duly returned after approval. 1 Sayles' Civ. Stats., art. 691a.

(8) Commissioner of the General Land Office, after certification, designated the specific point at which the line shall begin and to what point it shall be run. 1 Sayles' Civ. Stats., art. 691b; Acts of 1889, the same as sec. 8 of 22nd April, 1879, and repeals art. 691b of Act of 18th March, 1885.

(9) The line thus fixed as the boundary line shall thereafter be the true dividing line between said counties. Latter part art. 691b, Acts of 1889, Sayles' Addenda, art. 691b, p. 98; see also, latter part of art. 691a, 1 Sayles' Digest, 246.

The demurrer admitting the truth of the allegations in the petition, we can safely say under the law:

(1) The original legislative boundary lines were subject to change.

(2) The said original line was duly changed in 1882, and another line fixed as the true boundary line between the counties.

(3) The said original line being duly changed, and another line under the authority of the statute being duly fixed as the true line, such second line was thereafter the true line of boundary, and not subject to be changed by any mode known to the Constitution and laws of Texas.

(4) That the Commissioner of the General Land Office having exercised the functions with which he was clothed by section 8, Act of 1879, and article 691b, Sayles' Addenda, his powers as to the county line acted on were exhausted, and neither he nor his successor could again act on that subject matter.

The questions then which come before this court, in this case, are:

First. Under the Constitution and laws of Texas, is the Commissioner of the General Land Office, being the head of one of the executive departments, subject to be coerced or restrained in a proper case by the orders of the court?

Second. If not so subject to be coerced or restrained in his official capacity when acting in matters over which he has jurisdiction by the Constitution and laws, can he be restrained from acting when his act will entail public evils, which act is ultra vires the authority with which he is clothed by the Constitution and laws of the State? In other words, when he acts under color of his office—when there is no real power or jurisdiction to act, and when such act, if allowed to go unchallenged, will entail public evils?

1. The Constitution of 1876, article 5, section 8, is phrased, * * * "and the said courts and the judges thereof (district) shall have power to issue writs of habeas corpus in felony cases, mandamus, injunction, certiorari, and all writs necessary to enforce their jurisdiction."

The Constitution of 1845 does not give the express power to issue the writs of mandamus and injunction, but the act of 1846 does, in about the language of the Constitution of 1876, viz.: "The judge * * * shall have authority, either in term time or vacation, to grant writs of mandamus, injunction." * * * Sayles' Dig., art. 1123.

This statute law and the Constitution of 1876 were in force in 1881, when the Seventeenth Legislature enacted the following law: "No court of this State shall have power, authority, or jurisdiction to issue the writ of mandamus or injunction * * * against any officer of the Executive Department of the Government of this State." * * * Sayles' Dig., art. 3433a.

In 1891 the Judiciary Article was amended, and the jurisdiction of the District Court stated to be— * * * "and said court and the judges thereof shall have power to issue writs of habeas corpus, mandamus, injunction." * * * Amendments Const., 1891, to art. 5, sec. 10; session acts, 1891, p. 200.

The Commissioner of the General Land Office is the head of one of the executive departments of the Government. Sec. 1, art. 4.

It will not be contended, we suppose, that the act of 1881 withdrew from the District Courts the power to issue writs of mandamus and injunction against the Commissioner of the General Land Office, if that power was vested in them by the Constitution. If so vested, the power was constitutional and could be in no way limited or restricted by a legislative act, unless there be constitutional provision made for the extension or decrease of jurisdiction. Ex Parte Towles, 48 Texas, 439.

There is provision made in the Constitution, article 5, section 22, in relation to changing the jurisdiction of the County, but none as to District Courts.

Such being the case, we take it that the discussion is closed on the proposition that the act of 1881 at all interfered with the jurisdiction of the District Courts as conferred on them by the Constitution.

The question then comes, what are the powers of the District Court in regard to injunction to restrain the execution of an illegal act, or constrain by mandamus the performance of a legal ministerial duty by the Commissioner of the General Land Office.

Under the Constitution of 1845 and Act of 1846, the Supreme Court, as we understand it, at no time hesitated to award mandamus against the Commissioner of the General Land Office to compel him to the performance of a plain duty, where no discretion was involved. Arberry v. Beavers, 6 Texas, 464; Auditorial Board v. Arles, 15 Texas, 72.

In the case of Stewart v. Crosby, 15 Texas, 546, the court adjudicates questions involving mandamus and injunction against the Commissioner of the General Land Office, and nowhere intimates want of jurisdiction and power. And so in the case of McLelland v. Shaw, Comptroller, 15 Texas, 319; and likewise in Jones v. Shaw, 15 Texas, 577. See also, Puckett v. White, Commissioner, 22 Texas, 559; Durrett v. Crosby, Commissioner, 28 Texas, 687; Auditorial Board v. Hendrick, 20 Texas, 60.

Railway v. Commissioner, 36 Texas, 382, is not only well considered, but an exhaustive discussion on the question, and the rule laid down, "mandamus lies against the Commissioner of the General Land Office." This was under the Constitution of 1869–70, which gave no express jurisdiction to issue such writ.

In Tabor's case, 29 Texas, 509, the rule is recognized plainly, that mandamus lies against the Commissioner where the duty is ministerial, citing 3 Texas, 51; 5 Texas, 471; 12 Pet., 524; 22 Texas, 24.

The same rule is recognized in the Bledsoe case, 40 Texas, 537; but the special court decides that in that case the writ would not issue because the Comptroller belonged to the Executive Department. Const. 1869–70, art. 4, sec. 1.

Two judges dissented, and presented the following proposition: "The power of the court to grant the writ has never been denied by the court, whenever the facts of the particular case brought the complaint within the letter and the reason of the law, save in one solitary case, 24 Texas, 317, which was subsequently overruled. 36 Texas, 384."

This principle, maintained by the dissenting judges, was asserted by a majority of the court in Kuechler's case, 40 Texas, 610, and the old rule re-established, of power in the court to issue the writ, notwithstanding section 1, article 4, of the Constitution, before cited.

The argument and authorities cited are exhaustive, and, it would seem, ought to have finally determined the question, but there was a dissenting opinion again.

In Freeman's case, 45 Texas, 592, the questions of jurisdiction and power were passed without mooting.

In Gross' case, 47 Texas, 429, the question was again brought in review, and Bledsoe's case approved. But in this case the Chief Justice dissented, not giving reasons, because he was the judge who delivered the opinion of the court in Kuechler's case, where the power of the court was upheld to issue the constitutional writs. In this Gross case, however, the court admits, in effect, that the Commissioner could be compelled to issue patents, but seems to draw the line there. To admit the power of the court at all is to admit the whole question.

In Chalk v. Darden, 438, same volume, the proposition is clearly laid down, that as to the Comptroller the court had no jurisdiction to order mandamus; but the ruling was merely obiter, the question not being made, and not necessary to the decision of the case. The dissent of Chief Justice Moore being noted in the preceding case.

In the case of Taylor v. Hall, 71 Texas, 206, 213, this question was pretermitted by the court, although expressly and directly made by the pleadings and attorney for Commissioner Hall. It was the front question, and passed, and the decision made to turn on a subordinate question in the case.

This is the last utterance of the court on the subject of the jurisdiction of the court to issue these constitutional writs.

After the utterances recited herein the Constitution was amended, and the power of the District Courts to issue these remedial writs retained, repeating the language of the Constitution of 1876, and the legislative act of 1846.

It is the general rule, that where the courts have interpreted the law, Constitutions on that subject matter adopt the interpretation given by the courts. On the subject of the power of the courts to issue these great remedial writs, no rule of the dignity of stare decisis has been fixed in the latter years. The rule stare decisis was fixed in the earlier days, and has been shaken since, but not destroyed or broken. There has been no case from volume 40 where the question has been considered that there has not been dissenting opinions; so we may say that the question is an open one, and that it devolves on this court to lay down and establish the true interpretation of the Constitution. The Act of 1881 was a legislative construction of the Constitution. The passing of the act was an assertion that in its absence the courts had the constitutional power to issue the writs.

Outside of Texas, the rule, if correctly stated in the American and English Encyclopedia of Law, where a great number of cases are collected, would uphold the exercise of the power invoked in the case at bar. Vol. 14, subdivs. 3, 4, p. 143, and authorities cited.

The expression eo nomine that the Commissioner of the General Land

Office should constitute part of the Executive Department of the State, did not add to nor take from any of the constitutional or statutory duties that rested on him; and why the mere naming of him in that connection should release him from the jurisdiction of the court, so far as his merely ministerial duties are concerned, it is hard to conceive, and much harder to believe as a legal proposition.

2. If the law forbids the writ to one of the heads of the departments who belongs, eo nomine, to the Executive Department of the Government, then, are the courts without jurisdiction to restrain him when under color of office he threatens or proposes to do an illegal act, which performed will eventuate in public injury or injuriously affect individuals or legal persons?

We desire to be exactly understood on this proposition, viz.: In 1882 the Commissioner fixed this boundary line. The fixing of it was a finality, and the power of the Commissioner, whether the one who acted or any successor, was exhausted. Ten years afterward this line is disturbed, and it is proposed to review and re-establish it in such way that the inhabitants along the boundary will be thrown into the disturber's territory, and the other county be deprived of material assessable values and citizenship. Apparently legal steps looking to the change are taken. The question comes before the Commissioner. He will probably so act as to effectuate the change. The wronged county appeals to the courts to restrain the Commissioner from acting, because if he acts it will be without real and only by virtue of colorable authority; the real authority having been once exercised, being only once exercisable, and therefore exhausted, and yet the courts will not respond to prayer to prevent the injury. If this be the law, then a county may be by conscienceless and pandering officials absolutely dismembered, and reduced to dimensions below constitutional area. There is no jurisdiction in the courts to take cognizance of the question of the right or wrong of the matter with the counties as parties to the litigation.

In such case as here presented, the law lies quiescent and indifferent, if the contention of defendant in error is to prevail. Appellant is wholly remediless while an official without authority dismembers her, unless the courts will restrain the official in his lawless action. He is not acting inside the lines of his authority as an official, but outside of them as an individual, but with the sanctified color of authority thrown about him.

We are not prepared to accept as law a proposition so monstrous. It leads to the deification of an official, and treads under foot substantial rights of individuals and counties. The arms of the law are long enough to reach such disregarders of it, and strong enough to arrest and restrain the offender. The People v. Canal Board, 55 N. Y., 394; Ohio v. Chase, 5 Ohio St., 528; Attorney-General v. Forbes, 2 Mylne & Craig, 123.

It is true, a clear case must be made out, or the restraining arm of the

law will not be lifted up nor reached out to seize; but when the case is clear, the wrong imminent, and the threatened injury material, the law does not hesitate, but acts firmly, promptly, and effectively.

Could there be a clearer case than the bill of complaint presents, the danger greater, or the injury more material? Could the want of authority in the main actor—the final actor—be more fully demonstrated? If so, it will be a case where there is absolutely no semblance to or color of authority behind the party who is sought to be restrained.

We believe complaining county by its pleadings manifests a state of case where relief should be granted to prevent wrong.

*Charles A. Culberson*, Attorney-General; *Frank Andrews*, Assistant Attorney-General; and *J. S. Sherrill*, for defendants in error. — It is admitted, that if the court has no jurisdiction to grant relief as to the defendant McGaughey, it has none as to Kinscy, surveyor for Hunt County, and the case throughout is treated as against the one defendant.

1. The Commissioner of the General Land Office is the head of one of the executive departments of the State Government, and the courts of the State have no authority, power, or jurisdiction to issue or enforce the writ of injunction against him. Plaintiff's bill of complaint shows that W. L. McGaughey, defendant in error, is the Commissioner of the General Land Office of this State. Const., art. 2, sec. 1; art. 4, sec. 1; Act 17th Leg., Sayles' Dig., art. 3433a; Railway v. Randolph, 24 Texas, 334; Bledsoe v. Railway, 40 Texas, 537; Railway v. Gross, 47 Texas, 428; High on Ex. Legal Rem., sec. 120; 2 High on Inj., art. 1326; Cool. Const. Lim., 4 ed., 221–225.

2. The courts of this State have no power, authority, or jurisdiction to coerce, direct, or restrain the heads of the Executive Department of the State Government in any action involving the exercise of official judgment and discretion. Plaintiff''s bill of complaint shows on its face that surveyors had been appointed by the courts of Hunt and Kaufman Counties to ascertain, mark, and establish the boundary line between said counties. That the surveyors so appointed disagreed, and the fact of such disagreement had been by them certified to the Commissioner of the General Land Office. That the said Commissioner, acting upon said disagreement, has issued instructions to the surveyors, designating to them the specific point at which they shall begin and the specific point to which they shall run, and the line to be established. Const., art. 2, sec. 1; art. 4, sec. 1; Rev. Stats., ch. 4, title 22, amended April 2, 1889, 21st Leg., p. 42; Railway v. Randolph, 24 Texas, 334; Bledsoe v. Railway, 40 Texas, 537; Kuechler v. Wright, 40 Texas, 600, and dissenting opinion of Chief Justice Roberts; Railway v. Gross, 47 Texas, 428; Taylor v. Hall, 71 Texas, 213; Marbury v. Madison, 1 Cranch, 137–166; Decatur v. Paulding, 14 Pet., 499; United States v. Guthrie, 17 How., 284;

Gaines v. Thompson, 7 Wall., 347; United States v. Edmunds, 5 Wall.,. 563; The Secretary v. McGarahan, 9 Wall., 312; Carrick v. Lamar, 116. U. S., 427; Dunlap v. Black, 128 U. S., 40; United States v. Windom,. 137 U. S., 636; United States v. Blaine, 139 U. S., 306; Secombe v. Kit-- tleson, 29 Minn., 561; High on Inj., sec. 1326; High on Ex. Legal Rem., sec. 120; Mech. on Pub. Off., sec. 954, et seq.; Throop on Pub. Off.,. sec. 797.

3. If the Act of 1881, before cited, is valid, it is the end of all contro- versy in this case. Whenever an act of the Legislature can be so con- strued and applied as to avoid conflict with the Constitution and give it. the force of law, such construction should be adopted by the courts.

A law should never be declared void by the courts unless its invalidity is placed beyond reasonable doubt.

Does the Act of 1881 conflict with the Constitution? Does it limit or attempt to limit the constitutional powers of the District Courts to issue the writs of mandamus and injunctions?

It is a familiar rule of construction of constitutions, that the whole is. to be examined with a view to arriving at the true intention of each part. Cool. on Const. Lim., 57.

Article 5, section 8, of our State Constitution, confers on the District. Courts and the judges thereof the power to issue writs of mandamus, in- junctions, certiorari, and all writs necessary to enforce their jurisdiction.

Article 2, section 1, provides, that "the powers of the Government of this State shall be divided into three distinct departments, and each of them be confided to a separate body of magistracy; and no person or col- lection of persons being of one of these departments shall exercise any power properly attached to either of the others, except in the instances. herein expressly permitted." Construing these provisions together, we find: First. The powers of the Government are divided into separate de- partments, and must be kept distinct. That the judiciary can not exercise any power confided to the executive. Second. The District Courts have power to issue the writs of mandamus and injunction, and the power is. general within the proper sphere of the Judicial Department, but can not extend to any power properly attached to the Executive Department. The judiciary is not expressly permitted by the Constitution to exercise any power over the Executive Department, and therefore by the plain terms of the instrument itself is prohibited from doing so.

Tested by these rules, the Act of 1881 is not in conflict with the Con- stitution. It does not limit the power of the courts to issue these reme- dial writs in proper cases. It does not take from the courts any power which they have under the Constitution. It was not, as counsel for plaintiff contend, a legislative expression that in the absence of such law the courts had the power to issue these writs, but on the contrary was a. legislative declaration of the proper limitation of the powers which the

courts may exercise under a proper construction of the Constitution. It is clear that the Constitution never conferred nor assumed to confer upon the District Courts authority to issue these writs against any of the heads of the Executive Department of the Government. The courts are authorized to issue such writs when necessary to enforce their jurisdiction. But they have no jurisdiction, either original or appellate, in matters confided entirely to the Executive Department. The courts are a distinct and separate body of magistracy, and are prohibited in express terms by the Constitution from the exercise of any power attached to either of the other departments. The authority to issue writs of injunction, mandamus, * * * conferred by article 5, section 8, was never intended to give to the courts power positively prohibited by article 2, section 1.

Aside from the Act of 1881, the question presented in this case is no longer an open one. It was decided in the case of Bledsoe v. International Railway Company, before cited. In the subsequent case of Kuechler v. Wright the majority of the regular members of the court as then organized were prepared to hold that the courts have power to issue these writs against the heads of the Executive Department in certain cases. But there was no decision to that effect. The case was decided on another point. In Railway v. Gross, 47 Texas, 428, the Bledsoe case was approved, and the principles therein announced were reaffirmed, that the courts have no power to issue or enforce these writs against the heads of the Executive Department.

These decisions we think conclusive of the question.

If we look to the decisions of the courts of other States and of the Supreme Court of the United States, we find, that in all cases where the power of the courts to control the heads of the Executive Department has been upheld, it has been in cases where the duty to be performed was purely ministerial; and no case can be found upholding such power where the duty to be performed was one involving the exercise of judgment and discretion. We desire in this connection to call special attention to the case of Carrick v. Lamar, 116 United States, 426, decided in 1886, and the more recent cases of United States v. Windom, 137 United States, 636, decided in January, 1891, and United States v. Blaine, 139 United States, 306, decided in March, 1891, in all of which the doctrine is announced as the law of that court, that the courts can not control the heads of the Executive Department in matters which require the exercise of judgment, consideration, or discretion. In the former case Mr. Justice Field says, "It is settled by many decisions of this court," a large number of them being cited by him.

If a question can be settled by a long and unbroken line of decisions by the highest court in this country, this question has been settled by the Supreme Court of the United States. And if this be the law, that under the Federal Constitution the courts can not control the heads of the Ex-

ecutive Department, with how much greater force does the principle apply to this State, where these officers under the Constitution belong, eo nomine, to the Executive Department.

A ministerial act is one not requiring the exercise of judgment about the thing to be done. The petition in this case shows clearly that the act sought to be restrained is not ministerial.

The duties of the Commissioner of the General Land Office in regard to disputed county boundaries are not in any sense ministerial. When surveyors appointed to run a boundary line fail to agree, it is then the duty of the Commissioner to "examine the disputed matter at once, and from such data as the maps and archives of his office furnish" he must determine the line to be run. He must designate the "specific point to begin and the specific point to which they shall run, and this shall conform as nearly as possible to the line designated in the act creating such county line." He must pass on questions of law and facts, and must officially determine the questions at issue.

There is another view of the case presented in the brief of counsel for appellant which we desire to notice.

The question is there propounded, "If the Commissioner of the General Land Office is not subject to be coerced or restrained while acting in matters over which he has jurisdiction by the Constitution and laws of the State, can he be restrained from acting when his act is ultra vires the authority with which he is clothed?" Such question is not really presented in this case. The Commissioner of the General Land Office is authorized and required by law to determine all questions pertaining to county boundaries. He alone has such authority. He is the legal tribunal of last resort in such matters. He must determine for himself when his powers are invoked, must determine when he is called upon to act, and must judge for himself, under the law, of the extent of his powers and jurisdiction in each case presented; and in the exercise of his official judgment he is not subject to the control of any other department. No other official or department can decide when his jurisdiction is called into action, or the manner of its exercise. We want to be fully understood here. County Courts appoint surveyors to ascertain the locality of a boundary line between their respective counties. The surveyors disagree, and certify such disagreement to the Commissioner of the General Land Office. This is an appeal to that officer. Under the law he must decide the question. He alone can act. Can the courts decide for him, whether or not he shall act or how he shall act? Can they determine when his power is invoked? Can they determine when his jurisdiction is called into action any more than they can direct how his power shall be exercised in this matter which clearly requires the exercise of judgment on questions of law and fact? If so, where do the courts get this power? Not from law, because the law makes the Commissioner of the General Land Office the

sole arbiter. Not from the Constitution, because that instrument expressly prohibits the assumption of such power. Is the judiciary endowed with more wisdom than the Executive Department? Is there some mysterious, undefined, and indefinable authority supposed to exist in the judiciary that enables it to rise above the power which gave it existence? Is this a government of law? Does the Constitution mean anything when it places a limit on the powers of each department of government, and says to them, " so far shall you go, and no further?" Can the courts go contrary to law, and override precedent to remedy a supposed wrong? Certainly not; and yet that is just what the court is asked to do by plaintiff in error in this case. Those who contend for such power in the courts as here contended for fail to keep in view the division of the powers of government and the necessity for keeping such powers distinct. They insist that for every wrong there is a remedy, yet they fail to realize the fact that an illegal remedy would be infinitely worse than the evil sought to be corrected.

Usurpation by any department of our goverment of powers properly belonging to another department can never be tolerated so long as we respect the Constitution.

The Commissioner of the General Land Office, in the exercise of the powers conferred on him by law, may make mistakes and cause injury to private or public rights. The same is true of any other officer.

The courts may err; and who will say they have not erred, and that citizens have not been injured by their decisions? Dishonest men may be elected to the Executive Department; may such not also be elected judges?

"Conscienceless and pandering" officers in any department of government would be a great misfortune to the State. But this is no reason for giving to one department improper control over any other department.

So long as we observe the division of the powers of government under the Constitution, there can be no interference by one department with any officer of any other department in the discharge of the duties required of him by law.

Counsel for defendant in error urged a motion for rehearing on following grounds:

1. That the District Courts of this State have no power, authority, or jurisdiction to issue or enforce the writ of injunction against the Commissioner of the General Land Office for any purpose whatever. Const., art. 4, sec. 4; Act of 1879, p. 137; Act of 1885, p. 31; Act of 1889, p. 42; Sayles' Civ. Stats., art. 686; Keenan v. Perry, 24 Texas, 253.

2. That the courts can not coerce or restrain the action of a head of the Executive Department: Const. 1876, art. 2, sec. 1; Const. 1845, art. 5, sec. 1; Const. 1861, art. 5, sec. 1, art. 4, sec. 12; Const. 1866, art. 5, sec.

1; also, Pasch. Dig., art. 1407, which has been since repealed; Jones v. Mc-Mahan, 30 Texas, 729; Const. 1869, art. 4, sec. 1; Const. 1876, art. 4, sec. 1; Const. 1876, art. 5, sec. 3; Const. 1876, art. 5, sec. 8; amendment to Const., 1891, art. 5, sec. 3; amendment to Const. 1891, art. 5, sec. 8; Bled-soe v. Railway, 40 Texas, 537; Railway v. Randolph, 24 Texas, 317; 4 Jefferson's Works, 75, 317, 372; Kuechler v. Wright, 40 Texas, 600, dissenting opinion of C. J. Roberts, 647; McIntyre v. Wood, 7 Cranch, 504; Scofield v. Pinkinson, 46 Ga., 350; Graham v. Norton, 15 Wall., 427; Reeside v. Walker, 11 Hard., 290; Chalk v. Darden, 47 Texas, 438; Railway v. Gross, 47 Texas, 428; Carrick v. Lamar, 116 U. S., 427; United States v. Windom, 137 U. S., 636; United States v. Blaine, 139 U. S., 306; High on Ex. Legal Rem., 120; 2 High on Inj., sec. 1326; Mech. on Pub. Off., sec. 954, et seq.; Throop on Pub. Off., sec. 797; Arberry v. Beavers, 6 Texas, 457; Walker v. Tarrant County, 20 Texas, 20; Alley v. Denson, 8 Texas, 297; Worsham v. Richards, 46 Texas, 441.

3. The Act of February 15, 1881, prohibits the courts of this State from issuing any compulsory writs against the heads of the Executive Department of the State Government, and this court is without authority, when such an officer assumes to act upon matters properly pertaining to his office, to inquire whether he acts within the scope of his authority or not, unless the court assumes a supervisory control over the acts of such officer. Suth. on Stat. Con., sec. 234; 1 Kent, 461; Cool. Const. Lim., 4 ed., 220–225; Fletcher v. Peck, 6 Cranch, 128; Ogden v. Saunders, 12 Wheat., 270.

4. The court erred in holding that under the allegation of plaintiff's petition the Commissioner is acting without and beyond the scope of his authority, and that it is unnecessary to determine whether or not the courts can restrain that officer in the discharge of the duties required of him by law; and it is not believed that the courts have power to direct or restrain an executive officer in the discharge of duties requiring the exercise of judgment or discretion.

5. Equity will not restrain an officer from performing a void act, unless the injury is irreparable. Pome. Eq. Jur., secs. 1345, 259, 260, 265, 266; High on Inj., secs. 1311, 1327; High Ex. Legal Rem., sec. 120; The State v. Governor, 1 Dutcher, 331; Hawkins v. Governor, 1 Ark., 570; In re Bennett, 32 Me., 508; People v. Bissell, 19 Ill., 229; The State v. Warmouth, 22 La. Ann., 1; The State v. Governor, 39 Mo., 338.

6. Our propositions in our motion for rehearing, and our contention thereunder in this argument, may be summarized in the following subdivisions of those propositions, which will perhaps more clearly present our view of the case:

(1) The District Courts of this State have no jurisdiction to coerce or restrain the action of Commissioner McGaughey under the Constitution of this State, he being a head of the Executive Department.

(2) The statutes of this State expressly prohibit the enforcement of compulsory writs against this officer by such courts.

(3) The amended Constitution of 1891 authorized the Legislature to confer original jurisdiction upon the Supreme Court to issue the only writs against heads of departments anywhere authorized in that instrument, and the conferring of this power upon the highest tribunal is a denial to all others of its exercise.

(4) If the writ will issue against an executive officer in any class of cases, it will not issue to restrain any action which requires discretion and judgment.

(5) That the exercise of the official functions confided to the Commissioner in the case presented eminently requires judgment and discretion.

(6) The determination of county boundaries in the case presented is vested peculiarly and exclusively in the Commissioner of the General Land Office; no appeal is allowed from his decision, and therefore the courts have no supervisory control over his acts, and can not exercise his functions and discretion for him in any given case.

(7) That the functions thus conferred upon the Commissioner are quasi judicial, and he can not be controlled in his exercise thereof.

(8) That the presumption in such cases, where quasi judicial functions have been committed by law to executive officers, is just as conclusive in favor of correct executive interpretation and action as of judicial.

(9) That the court can render no decisive judgment establishing the county line in this action, or any judgment that would be binding in any other tribunal where the said county line may be an issue in any cause.

(10) That the court can not decide for the Commissioner that his authority, once granted, has been exhausted, and that he is assuming to act without authority, unless the court usurps the prerogative of the Commissioner and exercises for him the official functions confided to him by law.

(11) That equity will not restrain any officer from performing a void act in a case like this, unless irreparable injury or a multiplicity of suits would result from the proposed action, and it be further shown that no other remedy is available.

(12) That Kaufman County has a complete remedy for all its alleged wrongs, without any action against the Commissioner of the General Land Office.

KEY, ASSOCIATE JUSTICE.—Questions of law only are presented by this appeal. These are:

First. Under the Constitution and other laws in force at the time this case was disposed of in the District Court, to-wit, April 5, 1892, had that court jurisdiction to issue a writ of injunction against the Commis-

sioner of the General Land Office, he being the head of one of the executive departments of the State Government?

Second.    Eliminating the first question, as against a general demurrer, does the plaintiff's petition state such facts, if true, as will entitle it to an injunction?

1.  As settling the question of jurisdiction adversely to the plaintiff in error, defendants in error have invoked article 3433a, section 4, Sayles' Civil Statutes (passed February 15, 1891), which reads thus:

"No court of this State shall have power, authority, or jurisdiction to issue the writ of mandamus or injunction, or any other mandatory or compulsory writ or process, against any of the officers of the Executive Departments of the Government of this State, to order or compel the performance of any act or duty, which by the laws of this State they or either of them are authorized to perform, whether such act or duty be judicial, ministerial, or discretionary."

It is contended in behalf of the plaintiff in error, that if the Constitution of the State, as it existed at the time this statute was enacted, conferred upon the District Courts authority to issue writs of injunction against the Commissioner of the General Land Office, that it was not within the power of the Legislature to curtail the jurisdiction of these courts by a statute.

There is much force in this contention, but it is not deemed necessary to pass upon the constitutionality of this statute, because in our opinion it has no application to the facts of this case.    This law does not, in terms or by implication, prohibit the issuance of writs of injunction against the officers of the Executive Departments of the State in all cases; but the inhibition is, by the very words of the statute, limited to such writs and process as are issued "to order or compel any act or duty, which by the laws of the State they or either of them are authorized to perform, whether such act or duty be judicial, ministerial or discretionary."

In this suit it is not sought to compel either of the defendants to do any act or perform any duty which they are authorized to perform; but on the contrary, the gist of the plaintiff's case lies in the averment that the acts complained of have been, or will be, committed without and in excess of lawful authority.

Manifestly, if prior to the passage of the statute in question the District Courts were clothed with power to restrain the officers designated therein from the commission of acts without and beyond lawful authority, this statute was not intended to abridge or affect such power.

The defendants, by excepting to the court's jurisdiction, deny its power to determine whether or not the acts are within the scope of lawful authority; and this denial rests solely upon the fact, that the petition shows one of the defendants to be the head of one of the executive departments of the State.    This contention involves the proposition, that if such offi-

cers choose to exceed their powers, however much the excess or great the injury, the courts can not interpose to prevent them. If the plaintiff was conceding the power of the Commissioner of the General Land Office to act in the matter, and asking the court to compel him to act in a particular manner, the statute referred to would have application, and it would be necessary to determine its validity. But such is not the case. The petition virtually admits that if authority exists for the performance of the acts the plaintiff has no case.

With these observations, we pass from the consideration of this statute to other questions in the case.

Our State Constitution, in prescribing the jurisdiction of the District Courts, among other things, provides, that "said courts and the judges thereof shall have power to issue writs of habeas corpus, mandamus, injunction, and certiorari, and all writs necessary to enforce their jurisdiction." Const. 1876, art. 5, sec. 8. This same section also declares, that these tribunals shall have jurisdiction "of all suits, complaints, or pleas whatever, without regard to any distinction between law and equity, when the matter in controversy shall be valued at or amount to five hundred dollars, exclusive of interest;" and that they "shall have general original jurisdiction over all causes of action whatever for which a remedy or jurisdiction is not provided by law or this Constitution, and such other jurisdiction, original and appellate, as may be provided by law."

Anterior to the adoption of the amended Judiciary Article, in 1891, the Constitution contained the same provision in reference to the issuance of writs of injunction that it does now; but the last clause above quoted was added to and became part of the organic law by the amendment. If entitled to no other force, the sweeping language of this latter clause indicates that the purpose was to enlarge, and not restrict, the powers of these tribunals.

In the entire section conferring District Court jurisdiction, no word can be found indicating a purpose to restrict the power to issue injunctions and other designated writs, as to either subjects matter or parties, unless it be the first clause above quoted conferring general jurisdiction, without regard to any distinction between law and equity, when the matter in controversy shall be valued at or amount to $500; and it can not be pretended that it prescribes any limitation as to parties. In fact, it constitutes no limitation whatever on the power to issue the several writs enumerated in the other clause. This was expressly decided in Anderson County v. Kennedy, 58 Texas, 616.

In that case, construing the section of the Constitution now under consideration, the court say: "It would seem that the express power to issue a writ of injunction, other express power being given to issue such writs as might be necessary to enforce the jurisdiction of a court otherwise given, must carry with it the power to determine when and whether

or not facts exist which authorize it to issue; if so, this power to inquire is of the very essence of jurisdiction.''

The opinion in that case shows how distinctively independent of other provisions of the Constitution (in reference to subjects matter at least) is the clause conferring jurisdiction on District Courts to issue injunctions and other designated writs. However, it does not necessarily follow from this, that other provisions of the Constitution may not limit and control the clause referred to, as to the persons against whom injunctions may issue. A Constitution must be construed as an entirety; and in determining the meaning of a given provision, all other provisions in anywise bearing on the same subject are to be considered.

In accordance with this wise canon of construction, we now turn to certain other sections of the Constitution, invoked by counsel for defendants, as shielding the Commissioner of the General Land Office from the general power conferred upon District Courts to issue injunctions.

'' The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to-wit, those which are legislative to one, those which are executive to another, and those which are judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in instances herein expressly permitted.'' Const., art. 2, sec. 1.

'' The Executive Department of the State shall consist of a Governor, who shall be the chief executive officer of the State, a Lieutenant-Governor, Secretary of State, Comptroller of Public Accounts, Treasurer, Commissioner of the General Land Office, and Attorney-General.'' Const., art. 4, sec. 1.

As disclosed by the several conflicting opinions in Bledsoe v. International Railway Company, 40 Texas, 537, and Kuechler v. Wright, same volume, page 600, widely divergent views have heretofore prevailed among the members of our Supreme Court as to the meaning and effect of section 1, article 2, and section 1, article 4, of the Constitution, as above quoted; and although a majority of the court held in Railway v. Gross, 47 Texas, 428, that the District Court had no jurisdiction, by mandamus or otherwise, to control the Commissioner of the General Land Office in the issuance of land certificates, it can hardly be said, that the law is clearly settled by that court, that writs of mandamus will not lie against the heads of the Executive Department to compel the performance of purely ministerial duties. In fact, it appears to have been the opinion of Judge Gould, in the case last cited, that such a writ would issue to compel the issuance of a patent to land; and as shown by his able opinion in Kuechler v. Wright, supra, Judge Moore, another member of the court, was of the opinion, that the heads of the Executive Department could be compelled by mandamus to perform any purely minis-

terial duty.    But even if the law be regarded as settled against the power
of District Courts to issue writs of mandamus against the heads of the
Executive Department, in our opinion, this does not determine the ques-
tion of authority to issue writs of injunction.    There is a vast difference
between coercing or restraining an officer in a matter within the scope of
his authority, and exercising similar control over him in a matter clearly
outside of and beyond his authority.    The authority of District Courts
to issue writs of habeas corpus is conferred by the same clause of the Con-
stitution that authorizes them to issue writs of injunction; and the one,
in so far as the question of jurisdiction is concerned, occupies no higher
plane than the other.    Could it be successfully contended, therefore, that
an application for a writ of habeas corpus, which otherwise would be
promptly granted, must be refused by a district judge if it disclosed the
fact that the restraint complained of was imposed by the head of one of
the Executive Departments of the Government?  Assuredly not.  If such
a construction of the Constitution should obtain, a citizen might be un-
lawfully imprisoned for years by the chief officer of one of the Executive
Departments, acting under pretended authority of his office, and the
courts would be powerless, though appealed to daily, to afford relief.
Such a construction can not be sound.

It may be that certain provisions in the Bill of Rights, designed for the
protection of liberty, will aid the construction which disallows exemp-
tions from the writ of habeas corpus; but if that source be looked to for
light, we find provisions there intended for the protection of property
rights also.

But we have referred to writs of habeas corpus, not only to show the
analogy on the question of jurisdiction to issue writs of injunction, but
also to illustrate the fallacy of the proposition (necessarily involved in
the plea denying jurisdiction), that because the Constitution separates
the powers of the State Government into three distinct departments,
therefore certain executive officers, when claiming to act officially, can
not be controlled or interfered with by the courts, however much they
may exceed their powers, and however great may be the injury resulting
from their acts.

The fact that the Constitution divides the powers of the State Govern-
ment into three distinct departments, and prohibits officers of one depart-
ment from exercising any power properly attached to either of the others,
does not support the proposition, that the heads of the Executive Depart-
ment are placed beyond the control of the judiciary when they themselves
propose to exercise powers not attached to the Executive Department, and
from the exercise of which harm would result.    Interference in such an
instance, by either habeas corpus or injunction, is not an exercise by the
judge of a power properly attached to the Executive Department.

To prevent the assumption of authority which under the law does not exist, is not usurpation of such authority.

If the high duties and prerogatives of his office absolutely and under all circumstances shield the Governor of the State from District Court jurisdiction to issue and enforce remedial writs, which we do not decide, there is no such relation existing between the Chief Executive and the Commissioner of the General Land Office as will entitle the latter to like immunity.

We conclude, therefore, that the District Court had jurisdiction to try the case.

2. Does plaintiff's petition state a cause of action?

It is alleged, that the threatened acts are about to be committed by the defendants without authority of law. In determining the sufficiency of the petition, however, this averment is not to be taken as true, unless the facts alleged show want of authority.

April 22, 1879, the Legislature passed an act prescribing the manner of ascertaining county boundaries. Laws 16th Leg., p. 137. The eighth section was amended in 1885, but this amendment was repealed in 1889, and the original section re-enacted. Laws 21st Leg., p. 42. It and the seventh section read as follows:

"Section 7. That if either of the surveyors appointed to run and mark such line shall fail to attend at the time and place appointed, the one in attendance shall proceed alone to perform the duties assigned him, and make his report to the County Court of the county employing him, which, being approved by such court, shall be recorded as evidence of the line in question; and the line so surveyed and marked shall thereafter be regarded as the true boundary line between the counties." Sayles' Civ. Stats., art. 691a.

"Section 8. That should the surveyors above provided for fail to agree as to the true boundary line between their respective counties, the fact of such disagreement, with a full statement of the questions at issue between them, shall be by them reported to the Commissioner of the General Land Office, whose duty it shall be to examine the disputed matter at once, and from such data as the maps and archives of his office furnish, shall designate to such surveyors the line to be run, stating at what specific point they shall begin and to what specific point they shall run, adhering as nearly as possible to the line designated in the act creating such county line, which instruction shall be authority for said surveyors to run such line, and the line so run as above directed shall thereafter be the true dividing line between said counties." Sayles' Addendum, art. 691b.

The concluding clauses of these two sections are in substantially the same words, and obviously have the same meaning.

Everything that can be said in support of the finality and conclusiveness of proceedings terminating under section 7, applies with equal force to such as terminate under section 8, which declares that the line so established under the direction of the Commissioner of the General Land Office " *shall thereafter be the true dividing line between said counties.*"

In Jones v. Powers, 65 Texas, 207, section 7 was construed, and it is there said: " Under all the laws made for the purpose of furnishing a method by which the lines of a county may be actually established upon the ground, it may be held, if the lines have once been definitely fixed upon the ground by an actual survey, made, reported, and approved as required by the statute, that a County Court has no power to direct another survey to be made and thereby establish a boundary line different from the one established at some former period.   *   *   *   None of the statutes seem intended to give power from time to time to a County Commissioners Court to correct what may have been incorrect in the establishment of a county line on the ground, but seem intended to give a means by which the line or lines may be made definite and certain, and when so rendered, in accordance with the statute, whether correctly run and marked or not, the statutory declaration, that ' the line so run and marked shall thereafter be regarded as the true boundary line between the counties,' ought to be given full effect and held as a prohibition to any further action looking to the establishment of any other line."

We can not assent to the proposition, that as often as surveyors appointed by contending counties certify their disagreements to the Commissioner of the General Land Office, that officer has jurisdiction in the premises, and that he is the sole judge of the extent of his powers.

It may be true in judicial proceedings, especially in courts of general jurisdiction, that the fact of a former adjudication of the matter in controversy between the same parties can only avail as a plea in bar, and does not affect the question of jurisdiction.

But such rule can have no application to the action of the Commissioner of the General Land Office establishing a disputed line between counties. Being an executive officer, it was not within the power of the Legislature to constitute him a court; and the statute in question does not attempt so to do.

He is merely authorized, in certain contingencies, to look to certain sources for light, and then direct how a line shall be surveyed; and the law conferring his authority declares that his action shall be final. Though the statute may remain in force, and the power exist as to other counties, having once exercised it as to particular counties, thereafter, as to them, it is as completely wanting as though it had never existed.

The petition alleges that in 1882, in an effort to establish the line in dispute, under the statute, and in conformity therewith, a disagreement between the surveyors representing Hunt and Kaufman Counties was duly

certified to the Commissioner of the General Land Office of the State, and that he, in accordance with the statute, caused the line to be surveyed, marked and established on the ground, and that no uncertainty exists as to its location as thus established.

If these facts be true, and in considering the sufficiency of the petition they are to be so regarded, then by such action of defendant McGaughey's predecessor all jurisdiction of his office over the matter in controversy between the two counties was exhausted; and any action on his part in reference thereto would be beyond the scope of his power, and void.

Courts of equity have sometimes refused to grant relief against void acts and instruments, upon the ground, that being void, they are harmless, and therefore relief would be superfluous.   The better rule appears to be, that when the thing complained of does not disclose its own infirmity, or when, though void, it has the semblance of legality, equity will afford appropriate relief.   Day Land and Cattle Co. v. The State, 68 Texas, 527.

Under the Constitution and laws of this State, the sale of a homestead under execution is void; yet such sales may be enjoined.   Gardner v. Douglass, 64 Texas, 76;  Van Ratcliff v. Call, 72 Texas, 491.

Equity will also restrain the sale of land levied on to collect a tax assessed without authority of law.   Court v. O'Connor, 65 Texas, 334; Davis v. Burnett, 77 Texas, 3;  Free v. Scarborough, 70 Texas, 672.

In discussing equitable relief against the acts of public officers, a recognized authority says:

"The preventive jurisdiction of equity extends to the acts of public officers, and will be exercised in behalf of private citizens who sustain such injury at the hands of those claiming to act for the public as is not susceptible of reparation in the ordinary course of proceedings at law. And it may be stated as a general rule, that when public officers, under color and claim of right, are proceeding to impair either public or private rights, or when their proceedings will result in serious injury to private citizens, without any corresponding benefit to the public, or when the aid of equity is necessary to prevent a multiplicity of suits, an injunction will be allowed.   *   *   *   In applications for relief by injunction against the acts of public officers, the determining point is, ordinarily, whether they are acting within the scope of their authority, or whether they are transcending that authority.   And while equity will not interfere while such officers are acting within the authority conferred upon them by law, to determine whether their action is good or bad, yet if they assume powers over property which do not belong to them, and infringe upon or violate the rights of citizens under pretense of such assumed authority, equity has jurisdiction to interfere for the protection of the citizen." High on Inj., 3 ed., secs. 1308, 1309.   See, also, People v. Canal Board, 55 N. Y., 395.

Applying these rules to the plaintiff's petition, we believe, as against a general demurrer, it states a cause of action. If the line has already been legally established, as alleged, and the defendants are allowed to disturb that line under pretended authority, much confusion and annoyance, and perhaps litigation, would result among the people residing in the disputed territory; and plaintiff, Kaufman County, would in all probability be greatly harassed, hindered, and delayed, and involved in a multiplicity of legal proceedings, if not defeated, in the collection of some of its legitimate revenues.

It is contended in behalf of the defendants, that a court of equity can not rightfully interfere with executive officers in matters requiring the exercise of judgment and discretion, and that for this reason the demurrer to plaintiff's petition was properly sustained.

If the Commissioner of the General Land Office, under the facts stated in the petition, had the power to act in the premises, it may be that the courts should not attempt to control his action; but being without authority to act at all, it is immaterial how much discretion the performance of the unauthorized act may involve.

If upon a trial on the merits the facts alleged in plaintiff's petition are shown to be true, an injunction should issue restraining the defendants from in any manner attempting to change or disturb the line between Hunt and Kaufman Counties as established under direction of the former Commissioner of the General Land Office.

The judgment of the District Court is reversed and the cause remanded.

*Reversed and remanded*

Delivered February 15, 1893.

Motion for rehearing refused.