**TERRELL et al. v. KASCH. (No. 7097.)** *

Court of Civil Appeals of Texas. Austin.
April 4, 1928.

Rehearing Denied April 25, 1928.

Claude Pollard, Atty. Gen., C. W. Truehart, Asst. Atty. Gen., and C. L. Black, of Austin, and E. M. Cape, of San Marcos, for appellants.

R. E. McKie, of San Marcos, for appellee.

*Writ of error refused.

BAUGH, J. Appellee, who was the originator and a grower and seller of a high grade cotton seed, used for planting purposes, generally known as "Kasch" seed, brought this suit against George B. Terrell, commissioner of agriculture of Texas, and the members and secretary of the state board of plant breeder examiners, created, appointed, and acting under the provisions of title 4, c. 2, arts. 56 to 67, R. S. 1925, to restrain said appellants from "registering" or "certifying" certain cotton seed, fully described in his pleadings, on the grounds that such registration and certification was illegal and unauthorized, and that said illegal action of appellants worked an irreparable injury to appellee's private business, for which he had no adequate remedy at law. The trial court granted a perpetual injunction, in part as prayed for, from which this appeal is prosecuted.

Chapter 2, R. S. 1925, among other things, provides for registration upon application of the breeder, after he has complied with the requirements of the law and the regulations of said board, of such applicant as a "registered cotton seed breeder," and authorizes such registered breeder to advertise and sell as "registered cotton seed" such seed as are produced in conformity with said law and the regulations of said board and are so registered. The law also provides for inspection, for issuance of certificates, tags, and labels, by the commissioner of agriculture, etc. It further provides (articles 61 and 62) that any grower of cotton seed for planting purposes, who has complied with all the requirements of the law and the regulations of the board, may, upon his application, be registered as a "certified cotton seed grower," and be entitled to advertise and sell his seed produced in conformity with said law and the board's regulations as "certified cotton seed." Only the first and second year progeny of "registered cotton seed," however, which have been grown under such regulations, are entitled to be registered as "certified cotton seed."

Kasch was neither a "registered cotton seed breeder" nor a "certified cotton seed grower," nor had he applied to have any of his seed either "registered" or "certified." The trial was to the court without a jury. No findings of fact nor conclusions of law were requested. The pleadings were lengthy, and we shall not undertake to summarize them here. The judgment of the trial court sufficiently states the questions raised, and recites, among other things, the following:

"Defendants have heretofore registered, under Texas Cotton Seed Registration and Certification Act, cotton seed belonging to and the property of plaintiff without his application therefor and without his knowledge, approval or consent, and have issued and delivered to another party registered tags for said cotton seed without the consent of plaintiff and have refused to cancel said registration or recall said tags when requested so to do by plaintiff; and it further appearing to the court that defendants have heretofore certified and issued and delivered certification tags for cotton seed which was the first year progeny of plaintiff's unregistered commercial cotton seed which he produces and sells as 'Kasch Improved Pedigreed Seed,' and which is commonly known as 'Kasch Cotton Seed,' and it further appearing to the court that the cotton seed produced and sold by plaintiff aforesaid, is not registered cotton seed as defined by the Texas Cotton Seed Registration and Certification Act, and the rules and regulations promulgated thereunder, and that the first-year progeny of such seed is not such seed as the law permits to be certified.

"It further appears to the court that the certification tags issued for such seed for use on the bags or containers thereof state and represent that such seed are of the 'Kasch' type or strain and that same were produced under and comply with the requirements of the law and the rules and regulations relating to certified cotton seed, but that such seed did not in fact meet the requirements of the law and the rules and regulations. That defendants refused to heed plaintiff's protest against such action and refused to cancel such certification or recall said tags.

"That defendants have heretofore asserted and claimed the right to register and certify seed as aforesaid and still assert and claim the right so to do, and threaten to in the future register and certify seed of like ownership and kind under the same or similar conditions.

"It further appears to the court that such acts of defendants are without authority of law and in excess of the authority given them by law, and contrary to the rules and regulations promulgated by them."

"It further appears that the acts of defendants in registering and certifying cotton seed as above stated, if permitted to continue will seriously injure the business of this plaintiff and the reputation of his product, and cause him irreparable injury for which he has no adequate remedy at law."

The court thereupon granted an injunction restraining defendants, appellants here:

"(a) From registering or certifying any cotton seed produced or owned by the plaintiff, Ed Kasch, without his application therefor or his express consent. (b) From in the future certifying any cotton seed which is produced from and is the first-year progeny of Ed Kasch's unregistered commercial seed which he offers and sells to the public as Kasch's improved pedigreed cotton seed. (c) From in the future issuing and delivering to any person, firm or corporation certification tags for cotton seed which is the first-year progeny of Ed Kasch's unregistered commercial cotton seed."

Only the officers named in chapter 2, R. S. 1925, and who are charged with the administration of said law, were made parties defendant, and in the main the charges against them were that they had violated said law to the injury of plaintiff's business. It is to be noted, also, that the injunction appealed from prohibits only the performance by appellants of acts which are admit-

tedly not authorized by said law, and which if done would constitute a violation thereof.

■Appellants do attack section (a) of the restraining order as being without support in the evidence. It is true that in their pleadings appellants did disclaim any intention of registering seed belonging to appellee, and Commissioner Terrell testified that he would not knowingly register or certify appellee's seed, except upon his application. There was proof, however, to sustain the trial court's finding that appellants had certified seed grown by other parties under contract with Kasch, which were the property of Kasch, without his application and over his protest, and that they claimed the right to do so. Not only was the injunction on this phase of the case authorized, but in no event could it injure appellants to be prevented from doing an unauthorized act which they disclaimed any intention of doing.

It is against sections (b) and (c) of said injunction that appellants lodge their chief complaints. The proof clearly showed and appellants in effect admit that they had "certified" first-year progeny of Kasch's unregistered commercial cotton seed, grown by planters who were not parties to this suit, and that such certification was not authorized by law. Nor is it controverted that such illegal certification damaged the appellee's private business in a manner not suffered by the public generally. Their contention is, however, that the injury inflicted by such unlawful acts on their part, was not such *legal* injury as would entitle appellee to the relief sought. They asserted in their pleadings, and insist here, that appellee's suit was in fact, and that such is the result of the injunction, a suit to prevent unfair competition based upon an asserted right of appellee to an exclusive use by him of the trade-mark or trade-name "Kasch" in his sale of that strain of cotton seed for planting purposes. This contention, however, cannot be sustained because appellee expressly pleaded a disclaimer of any such right, and admits that the term "Kasch" has come into general use as descriptive of a strain or variety of cotton and cotton seed originated by him.

Appellants urge that the tags complained of by appellee merely describe the seed so improperly certified as seed of the "Kasch" variety, grown by the person named on said tag, and that they nowhere state that such seed were grown by Kasch, or that the parent seed from which they were the first-year progeny were grown by Kasch, and that if Kasch could not complain of their use, though illegal, in the hands of those to whom such tags were issued, he could not complain of their improper issuance and delivery by appellants; that is, that unless in the use of such tags, which bear the certificate of the commissioner of agriculture,

the persons receiving same are enabled to "palm off" on the public, as seed grown by Kasch, or first-year progeny of such seed, seed which are not so in fact, and which are inferior to Kasch's seed, he is not entitled to relief. In support of this contention they rely, among others, particularly on N. Y. & R. Cement Co. v. Coplay Cement Co. (C. C.) 44 F. 277, Am. Washboard Co. v. Saginaw Mfg. Co. (C. C. A.) 103 F. 281, 50 L. R. A. 609, and Borden's Condensed Milk Co. v Horlick's Milk Co. (D. C.) 206 F. 949. Those cases, however, were contests between private business enterprises, involving alleged false representations by one or the other in advertising the goods manufactured. In none of them is there any question of a public official exceeding his authority under the law, or of issuing to a private dealer an official certificate which gives to an article sold by such individual a higher standing on the public market than it is entitled to, and thereby injuring the private business of another.

■The cases cited are not applicable to the issues involved in the present case, as we view it. If appellee had sought by injunction to restrain a competitor from falsely advertising seed grown by such competitor, as being of the Kasch variety, which were not so in fact, or to restrain a competitor, from advertising for sale "Kasch" seed on the ground that such acts would constitute an infringement of appellee's trade-mark or trade-name, the cases cited would be applicable. But no such question is here presented. No competitors are parties to this suit. Appellee clearly sought in the instant case to protect only his private rights against the unauthorized conduct of state officers in excess of their authority, and the injunction granted goes no further than that. This protection he was entitled to.

■It is well settled that injunction is a proper remedy to prevent a public officer from exceeding his authority under the law when such conduct seriously invades the private rights of an individual without a corresponding benefit to the public. M., K. & T. Ry. Co. v. Shannon, 100 Tex. 379, 100 S. W. 138, 10 L. R. A. (N. S.) 681; Kaufman Co. v. McGaughey, 3 Tex. Civ. App. 655, 21 S. W. 261 (writ of error refused); Lawson v. Baker (Tex. Civ. App.) 220 S. W. 260 (writ of error refused); 32 C. J. 240; 2 Joyce on Injunctions, § 1372a. And when such unauthorized act is committed over the protest of the complaining party, made prior to its commission, equity will not be as exacting in requiring the complaining party to fully establish the invasion of his private property rights, before granting him relief, as when such public officer acts unwittingly.

The judgment of the trial court is in all things affirmed.

Affirmed.