DANIEL et al. v. RICHCREEK et al.

No. 8751.

Court of Civil Appeals of Texas. Austin.

June 29, 1938.

Rehearing Denied July 20, 1938.

William McCraw, Atty. Gen., and Scott Gaines and Wm. Brown, Asst. Attys. Gen., for appellants.

E. L. Kuykendall and R. J. Long, both of Austin, for appellees.

McCLENDON, Chief Justice.

Appeal from an interlocutory order appointing a receiver of a fund of $10,408.49 deposited by the "Texas Racing Commission" in the "suspense cash account" of the State Treasury under R.C.S. Art. 4388, Vernon's Ann.Civ.St. art. 4388, and ordering the Treasurer and Comptroller to issue a warrant for said sum payable to the receiver. The order also directs the State Tax Commissioner as custodian of the records of the Racing Commission to deliver such records to the receiver. The appeal is by the Treasurer, Comptroller, and Tax Commissioner in their official capacities.

The fund in question is the balance of what was known as the "Texas Racing Commission Jockey Fund," collected by the Racing Commission from jockeys and others engaged in various racing activity upon tracks licensed by, and under Rule 152 promulgated by, the Commission. This rule required the payment of license fees ranging from one to ten dollars as a prerequisite to engaging in the several activities on the licensed tracks. Subdivisions (4), (5) and (6) of the Rule provided:

"(4) Money received from these license fees is to be held and regarded as a voluntary subscription or contribution by applicant to be a fund created by the Texas Racing Commission for the purpose, among other things, of caring for jockeys injured while in the discharge of their duties, upon tracks under the jurisdiction of this Commission. Distribution and expenditures of the funds thus created to be wholly within the direction of the Texas Racing Commission, part of which may be used for the purpose of defraying any expense incident to its administration or for such other purpose as the Commission may deem expedient.

"(5) The right of any licensee to participate in said fund shall cease upon expiration or revocation of his license, except for injury received prior to such expiration or revocation.

"(6) The Commission may, in its discretion, without assignment of any reason for its action, deny to any applicant the right of participation in said fund, and in no event, shall it be required to render an accounting to contributors to said fund nor to any other person or agency."

Plaintiffs (two in number) allege their interest in the subject matter of the suit to be that "they paid Color Registration fees in the sum of $1.00 for the years 1934, 1935 and 1936 for the amounts that were assessed by the Texas Racing Commission under Rule 152 for the above mentioned years." The suit was brought as a class suit in behalf of plaintiffs "and all others who have paid money into what is known as the 'Texas Racing Commission Jockey Fund.'" It was alleged that altogether over $30,000 had been paid into this fund, the balance over that deposited in the Treasury having been "fraudulently and wrongfully expended and dissipated."

The right in the fund of plaintiffs and others for whose benefit they sue is predicated upon one of two grounds.

(1) That the exaction of the license fees by the Racing Commission was unauthorized; and the payment thereof, under coercion,—that is under penalty of not being allowed to engage in the several activities —constituted the Racing Commission trustees ex malefacto for the benefit of those paying the fees.

(2) That the fund constituted a voluntary trust for the purposes set forth in the above quoted subdivision (4) of Rule 152; and since the purposes of the trust and the existence of the trustees have determined, the fund belonged to the original contributors.

In either event appellees assert the fund never became public money, was improperly deposited in the suspense account of the Treasury, and should not be delivered to the receiver for distribution among those establishing their right to it.

The necessity for a receiver was predicated upon the allegation that there were more than five thousand contributors to the fund, who were scattered throughout the state and the United States; that it would require examination of the Commission's records and extensive advertising to ascertain who they were and to locate them; that the fund was needed to defray this expense; and that a receiver was necessary to recover the sums illegally diverted from the fund.

The suit was filed October 1, 1937, and on the same day a receiver was appointed, without notice, upon the verified allegations of the petition. October 21, 1937, the Treasurer and Comptroller filed a plea to the jurisdiction and motion to abate the

order appointing the receiver on the following grounds:

1. The court in an ex parte order pre-determined the status of the fund and mandatorily ordered its transfer to the receiver, contrary to the explicit provisions of Art. 4388.

2. The order was invalid under Art. 1735, which conferred exclusive jurisdiction on the Supreme Court to issue the writ of mandamus against officers of executive department of the state.

3. The order was void under Art. 2328, since it was passed without notice.

4. The receivership was premature in that the funds are in the custody of a public officer and before they can be withdrawn their status must be determined as provided in Art. 4388.

January 13, 1938, this pleading, in so far as it questioned the court's jurisdiction, was overruled, but was granted as to the appointment of a receiver and the order vacated. The court thereupon entered another order appointing a receiver, with the powers already stated. The appeal is from this order.

■ The first and fourth grounds of the motion are sustained for the following reasons:

The fund was placed in the "suspension account" of the Treasury by state officials acting under Art. 4388, and can only be drawn out of said account when and in the manner prescribed by said Article,—that is: "as soon as the status of money so placed * * * is determined," when it shall be transferred, if belonging to the state, by deposit in the Treasury, and if found not to belong to the state to be "refunded." In either case the method is by warrant signed by the Comptroller and countersigned by the Treasurer. The Article is explicit in requiring the "transfer" to be made "as soon as" which necessarily implies "not before" the "status" of the money is "determined." Clearly the word "status" includes every essential fact to its proper disposition, from the viewpoint of the Treasurer, its then custodian. If it should belong to the state it must be deposited in the Treasury by means of a "deposit warrant." If it does not belong to the state, it must be "refunded" by means of a "refund warrant." Ascertainment of the "status" of the money involves determination of the proper payee of such "refund warrant." Ordinarily "refund" means to pay back, thus implying that the payment is to be made to the party from whom received. Such party was the Racing Commission, concededly now defunct. Independently of this fact, we think, contextually, the prescribed "refund" means to the party legally entitled to demand and receive it from the Treasurer.

■ Under the Article no right to demand the money from the Treasurer could properly be asserted until its "status" is "determined." There can be no serious question but that "determined" in the sense of the Article means judicially determined. In any event, such is its necessary meaning where the Treasurer and Comptroller, each of whom must act to effectuate a transfer of the money, do not voluntarily assume the responsibility of making such determination. To compel their action a judicial proceeding is essential, and this means a plenary and not a mere interlocutory proceeding.

■ Whether the fund was illegally collected, or was a voluntary trust fund, or never became public money, or was improperly deposited in the suspension account of the Treasury, are issues which can not be determined in an interlocutory proceeding. The fund was collected by state officials under a claim of right; was delivered by them to and accepted by the Treasurer, and was deposited by the latter in the suspension account under Art. 4388. That Article provides the method for its withdrawal from that account. This method is exclusive, and must be complied with. Ex parte Stephens, 100 Tex. 107, 94 S.W. 327.

■■ It is not necessary to decide in this proceeding whether, assuming the correctness of appellees' assertion as to the "status" of the fund, the individual claims of appellees and others for whom they sue must be adjudicated before the fund can properly be taken from the custody of the Treasurer and delivered to a receiver appointed by the court. That question can properly arise only in a plenary proceeding to determine the "status" of the fund. It was stated in the argument that the Treasurer and Comptroller would contend, upon the merits of the case, that the fees were voluntarily paid, or in any event without protest, and therefore could not be recovered by those paying them, however illegal might have been their exaction. These officials are therefore asserting a claim to the fund as public money; and this issue cannot be determined in an interlocutory proceeding.

■ There is no allegation in the petition warranting the interlocutory appointment

of a receiver. The fund is in as safe custody as it can be placed, and there is no danger of its dissipation or loss. Nor is there any other allegation warranting appointment of a receiver in advance of a determination of the "status" of the fund. Phillips v. Perue, 111 Tex. 112, 229 S.W. 849, cited by appellees, has no application here. There, as stated in the opinion (page 851):

"The Treasurer appeared in the case and asked to be relieved of the trust. No question arises, therefore, as to his being improperly ousted."

Regarding the second ground of the motion appellees concede that Art. 1735, in terms confers exclusive jurisdiction on the Supreme Court to issue the writ therein named. They assert, however, that:

1. The statute is invalid in so far as it may be held to confer exclusive original jurisdiction on the Supreme Court to grant writs other than those specified (quo warranto and mandamus) in Art. 5, Sec. 3 of the Constitution, Vernon's Ann.St.Const. art. 5, § 3. This point seems to be well taken. Love v. Wilcox, 119 Tex. 256, 28 S.W.2d 515, 70 A.L.R. 1484.

2. That the order in issue does not seek "to order or compel the performance of any act or duty which, by the laws of this State" the Treasurer is "authorized to perform"; and therefore does not come within the statute (Art. 1735) conferring exclusive original jurisdiction on the Supreme Court. Cited in Crowell v. Terrell, Tex.Civ.App., 250 S.W. 252, error refused. The holding on this point is apparently in conflict with that of this court in State Highway Comm. v. Tengg, 57 S.W.2d 929, and Wertheimer v. Walker, 96 S.W.2d 831. However, the point was not necessarily involved in the Crowell Case.

3. Art. 1735, in so far as it seeks to confer exclusive original jurisdiction on the Supreme Court is invalid, in that it seeks to curtail the constitutionally conferred jurisdiction of the district court. This question appears to be one of first impression. It was not raised in any of the above cited cases.

The only question properly before this court in the present appeal is the propriety of the interlocutory order appointing a receiver. This question is fully disposed of in our above holdings under the first and fourth grounds of appellants' motion. So far as this appeal is concerned it is not necessary to pass upon the above stated questions involved in the second ground of the motion.

The third ground of appellants' motion was disposed of favorably to appellants by the court's order setting aside on this ground the original order appointing a receiver.

Because of the following statement in appellees' brief, reiterated in the oral argument, we have not considered any questions affecting the Tax Commissioner involved in the order:

"Appellees further state that since the order complained of was entered by the district court, further investigation has been made, and appellees have come to the conclusion that this suit should be dismissed as to all parties except the Comptroller and State Treasurer, and that upon the affirmance of this judgment and when the case goes back to the 126th district court, a motion to dismiss as to all other parties will be filed."

The order appointing a receiver is dissolved and the cause remanded.

Order appointing receiver dissolved; cause remanded.