## HUGHES v. McDONALD, Land Com'r, et al.

### No. 8723.

Court of Civil Appeals of Texas. Austin.

Nov. 16, 1938.

Rehearing Denied Dec. 14, 1938.

W. E. Fitzgerald, of Wichita Falls, for appellant.

Felts, Wheeler & Wheeler, of Austin, for appellee A. T. Farr.

Watkins & Mays, of Dallas, for appellees American Liberty Oil Co., Southern Liberty Oil Co., and M. H. Marr and Adah Marr.

Carney & Carney, of Atlanta, for appellees B. E. Echols, Mrs. Eva Echols, H. B. Echols, D. C. Johnson, J. W. Hanner and R. S. Allday.

Vinson, Elkins, Weems & Francis, and Thos. Fletcher, all of Houston, for appellee United Production Corporation.

Lasseter, Simpson, Spruiell & Lowry, of Tyler, for appellee Saltmount Oil Co.

McCLENDON, Chief Justice.

This suit, brought by Hughes against the Land Commissioner and others, was in form one for a writ of mandamus to compel the Commissioner to grant to Hughes a mineral lease upon a tract of land in Cass County under the provisions of Chap. 271, p. 452, General Laws, Reg.Sess., 42nd Leg. 1931, Vernon's Ann.Civ.St. art. 5421c. The other defendants (or respondents) were alleged to have interests adverse to Hughes. The Attorney General filed a plea to the jurisdiction on the ground that R.C.S. Art. 1735 confers exclusive jurisdiction upon the Supreme Court to issue the writ of mandamus against the Land Commissioner (an officer of the executive department of the state government) to compel the performance of an act or duty authorized by law. Some of the other defendants filed formal answers (general demurrer and general denial); others filed pleas to the jurisdiction upon the same ground as that of the Commissioner; and still others filed pleas of privilege seeking to change the venue to Cass County. Some of the latter also filed pleas to the jurisdiction similar to those of their co-defendants. Thereupon (October 15, 1937) Hughes filed a motion to dismiss as to the Commissioner, and prayed to be allowed to amend as to all other defendants. The record shows no formal action on this motion, and the trial judge certified in a qualification to a bill of exceptions that the motion had not theretofore been brought to his attention. The material portions of the judgment from which the appeal is taken are:

"On this the 15th day of October, A.D. 1937, came on to be heard said cause in its regular setting upon the docket of this court upon the several pleas to the jurisdiction heretofore filed herein by several respondents, whereupon came relator and announced to the court that the plea to the jurisdiction filed by the Attorney General of the State of Texas on behalf of the respondent, William McDonald, Commissioner of General Land Office, was good and should be sustained, but that in view of such plea to the jurisdiction relator desired to dismiss as to the respondent, William McDonald, Commissioner of General Land Office, and further stated to the court that he desired leave of the court to file an amended pleading; and, further, in open court stated that some of the respondents, to-wit: Cary M. Abney, William Caven, Daverne Corporation, Spray Oil Company, J. L. Wiener, W. B. Wiener, Samuel G. Wiener, Mrs. Connie Rogers Lacy and husband, W. F. Lacy, had filed pleas of privilege and pleas to the venue to Cass County, Texas, which pleas to the venue relator confessed in open court to be good;

"Whereupon, came on to be heard the pleas to jurisdiction filed by respondents in said cause, and the Court having heard such pleas and being of the opinion that such pleas to the jurisdiction are good and

should be sustained, and that the sustaining of such pleas required dismissal of the cause;

"It is accordingly ordered, adjudged and decreed that the motion of relator for the dismissal of the respondent, William H. McDonald, General Land Commissioner, be, and the same is, hereby in all things granted.

"It is further ordered that the several pleas to the jurisdiction filed by respondents, be, and the same are, hereby in all things sustained, and this cause is herewith dismissed.

"It is further ordered that said cause having been dismissed, the application of relator for leave to amend be, and the same is hereby denied."

In Daniel v. Richcreek, Tex.Civ.App., 118 S.W.2d 935, the constitutionality of Art. 1735, in so far as the jurisdiction therein conferred upon the Supreme Court was exclusive, was challenged on the ground that it curtailed the constitutionally conferred jurisdiction of the district court. The point was not essential to a proper disposition of that case and was therefore not decided. The point was not raised in prior decisions, the validity of the statute being assumed, and only its application being adjudicated. All parties concede the validity of the statute; and our decision, for the purposes of this case, is predicated upon that concession.

Briefly the respective contentions of the parties are these:

Appellees contend: (1) That the district court (whether of Travis or any other county) was wholly without jurisdiction of the subject matter of the suit, that the filing of the suit was a nullity, did not amount to the commencement of an action, and there was consequently no power in the trial court to grant leave to amend, order the venue changed, or enter any other order except to dismiss for want of jurisdiction, because the suit was one, and one only, for mandamus against the Land Commissioner (of which only the Supreme Court had jurisdiction), and the relief sought against the other defendants was merely ancillary or incidental; and (2) that the suit was in effect one against the State, jurisdiction to entertain which was wanting, absent legislative authorization.

Appellant contends (to the contrary) that the suit was not one for mandamus only, but also to adjudicate his title or right to a mineral lease as against the adverse claims of appellees; and since such adjudication depended upon fact issues over which the Supreme Court had no jurisdiction, it was essential that such adjudication be had in the district court before application for mandamus to the Supreme Court could be made; and that his petition set forth the facts sufficient to a justiciable controversy between him and appellees—thus asserting (however imperfectly and regardless of the specific relief prayed for) a cause of action, the subject matter of which was within the jurisdiction of the court.

It will not be necessary to set out in detail the allegations of appellant's petition relative to his claim of right to a mineral lease. The land covered by his application was alleged to be unsurveyed public domain, within five miles of oil production, not listed on the records of the Land Office, and not in conflict on the ground with land previously sold or appropriated. The essential steps toward acquiring a lease, including application to the Commissioner, hearing thereon, and his refusal to grant were alleged. Reasons of such refusal were alleged to be unknown to appellant. That portion of the petition relating to appellees and the prayer read:

"Relator would further represent and show unto the Court that the respondents, save and except the Commissioner of the General Land Office, have gone upon the land and premises hereinabove described, without legal authority and have taken possession of the same and are appropriating said land to their own use and benefit; that they have leased and drilled for oil and gas minerals and are appropriating the rents and revenues from said property to their own use and benefit and have taken and are now taking from said land and premises the minerals thereon and thereunder, and have produced and sold and appropriated to their own use and benefit the oil and gas in great quantities from said premises to the great damage of your Relator and the Public Free School Fund of the State of Texas, and they are now taking from said land and premises said oil, oil products and minerals and appropriating the same to their own use and benefit, without any right so to do, and are therefore trespassing, and will continue to trespass upon said land, premises to the damage of your Relator and the State of Texas, and its school fund in the sum of Fifty Thousand ($50,000.00) Dollars. In this connection, Relator would

ask that said respondents be required to file in this court, a true and correct statement and accounting of the oil and mineral products that they have taken from said land and be required to account to this Relator and the Public Free School Fund of this State for the same.

"Wherefore, your Relator prays that each of the said respondents be cited to appear and answer this petition, and that upon a hearing of this cause, he have judgment compelling and requiring the Commissioner of the General Land Office to grant him a mineral lease on the acreage described herein in accordane with the provisions of this Act, and in all respects, to approve said application and execute the character of lease required under the Act aforesaid, to your Relator; that the other respondents herein be cited to show why said Writ of Mandamus herein prayed for should not be issued, and that said respondents be required and compelled to file in this court an accounting of the oil and gas products that they have taken from the land and premises herein described; and that your Relator recover all costs in this behalf expended."

At the outset it may be conceded that the prayer for an accounting and the supporting allegations, taken alone, relate only to a claim for relief ancillary to the primary right of appellant, sought to be adjudicated; namely, his right to a mineral lease upon the property. For our present purposes, therefore, the accounting feature of the case may be disregarded as surplusage.

It can hardly be seriously questioned, we think, that the petition sought an adjudication of appellant's right to a mineral lease as against the claims of appellees, whatever they might be; and that a judgment in his favor (in a proper court) must necessarily adjudicate those rights. It must also be conceded that if the controversy between appellant and appellees is a justiciable one, independently of the Land Commissioner or the State, then the district court is the proper forum for such controversy.

While not conceding the existence of such justiciable controversy, appellees urge —and this seems to be their main contention to which the major portion of their briefs is devoted—that the cause of action asserted was one, and one only, for a writ of mandamus against the Commissioner, that the relief sought against the appellees was merely ancillary to such cause of action, and dismissal of the latter necessarily carried with it dismissal of

the former and left nothing for adjudication between appellant and appellees. This conclusion follows logically from the major premise, with which, however, we do not agree.

The distinction between the writ of mandamus under the English common law (a prerogative writ pure and simple and not reviewable by appeal) and that which our district courts are authorized to issue is thus clearly stated by Judge Moore in Griffin v. Wakelee, 42 Tex. 513:

"At common law a proceeding by mandamus did not partake of the nature of a suit between parties, but the relief sought was granted immediately by and through means of the writ itself. It was not in the nature of a judicial writ requiring a defendant to appear and plead. It was a direct and immediate command to the party to immediately fulfill the requirement of the writ, or show, by a return to it, cause why he had not done so. This return, whether true or false, could not be gainsaid or questioned. If sufficient cause to refuse the demand was shown in the return, the writ was discharged, if not, it was made absolute, and immediate obedience to it required under pain of attachment. Prior to the statute of Ann, no issue of fact could be made upon the return. If false, the remedy was not to be had by the mandamus, or a judicial proceeding inaugurated by it, but by an action against the respondent for a false return to the writ.

"That the writ of mandamus which may be awarded by the District Court under our statute is essentially different in almost every particular, is too obvious for comment. The relief sought to be effected through its aid is asked, as in any other case, by a petition alleging the facts by virtue of which it is claimed, with a prayer for such judgment as the facts warrant. The defendant is served and required to answer as in any other suit, and the case proceeds to trial and judgment as any other action, and there is no distinguishable difference in principle in the course of proceeding and result attained in it and any other suit in the District Court. When the judgment is rendered by the court, unless superseded or suspended by writ of error or appeal, it is carried into effect by the appropriate writ for this purpose, termed in the statute a writ of mandamus, from analogy, no doubt, drawn from the nature of the matters complained

of in the petition, to cases in which relief is granted by this writ at common law. Plainly, then, unless we discard principles, and are controlled merely by names, it must be treated and regarded as a judicial writ, based upon and issuing by virtue of, and to carry into effect, a judgment of the District Court. And so it has been in effect held by the Supreme Court of the United States."

See, also, Thorne v. Moore, 101 Tex. 205, 105 S.W. 985; 28 Tex.Jur., p. 516, § 3.

■■■ Under our procedure, the writ of mandamus is merely a remedy for righting a wrong or enforcing a right. It is not in itself a cause of action. The wrong sought to be righted or right sought to be enforced constitutes the cause of action; and its assertion in a proper court constitutes a civil suit. While the procedure as it relates to obtaining the writ "is in many respects sui generis," still, as in other civil suits, properly related causes of action may be joined. 28 Tex.Jur., pp. 612, 613, § 52. An illustrative case is that of Houston v. Emery, 76 Tex. 282, 13 S. W. 264, the holding in which is embodied in the following quotation from Chief Justice Stayton's opinion [page 265]: "It is claimed that it was not proper to entertain a proceeding for the purpose of reviving former judgments, and at same time enforcing payment through mandamus; that this was fatal misjoinder. This was practice to be commended, and a resort to two actions would have been as improper as unnecessary."

In 1841 the Congress of the Republic passed an act requiring all suits for mandamus against the heads of departments to be brought at the seat of government. Commenting upon this act in Commissioner of the General Land Office v. Smith, 5 Tex. 471, Judge Wheeler said: "It is well known, that this statute was adopted in consequence of a practice then prevailing, of calling upon the Commissioner of the General Land Office, by process from the Courts of remote counties, to show cause against the issuance of this writ in cases like the present, in such distant counties. This Act certainly recognizes the right to obtain the writ at the Seat of Government; and it must, moreover, be regarded as a legislative recognition of the legality of the practice then existing, of employing this writ as a private remedy; for it was its use in practice, as such, which the Legislature undertook to regulate. The use of the writ, as a private remedy, seems to be conformable to modern practice.".

After pointing out that the answer of the Commissioner raised fact issues, the opinion proceeds:

"These averments show a controversy as to matters of fact, of a character which, it is conceived, could not properly be made the subject of adjudication in this proceeding; but which must first be determined in an action of 'trespass to try title,' instituted in the proper county.

"The practice is understood, formerly to have been, to proceed in the county in which the land was situated, against the adverse party, to try the right, and the officer to compel the performance of the duty. But since the Act of the 25th of January, 1841 (5 Stat., Sec. 9,) proceedings by mandamus, against the heads of any of the departments of the government, must be instituted at the Seat of Government. It does not, however, appear to have been intended by the Act last cited to enable a party under the form of a proceeding by mandamus against the Commissioner of the Land Office, to bring any other person to whose lands he may choose to assert a claim, from his home or the county in which his lands may be situated, to the Seat of Government to defend his title. Such a practice would be regarded as intolerable, and could never have been contemplated by the Legislature. Where the object of the suit is to try the title to land, the law still requires that it shall be instituted in the county in which the land is situated. (Acts of 1846, p. 363–4, Sec. 1.) It is only in those cases where the right or title is not litigated, that the party may proceed by mandamus against the Commissioner, at the Seat of Government. But where there are questions of fact to be litigated between the holders of adverse claims, before the right of the party, to his patent, can be determined, he may and ought to sue upon his certificate and survey, in the county in which the land is situated, and there settle the question of right. That determined in his favor by the judgment of a Court of competent jurisdiction will no doubt invariably supersede the necessity of resorting to any coercive measures against the Commissioner of the Land Office to compel the issuance of his patent, or the performance of any other duty imposed by law upon that officer."

Thomson v. Locke, 66 Tex. 383, 1 S.W. 112, was a suit for a writ of mandamus to compel the county surveyor to survey lands which had been located by the plaintiff. The suit was brought in the county where the lands were situated, but in which the surveyor did not reside, and adverse claimants to the land were made parties defendant. The surveyor attacked the jurisdiction of the court on the ground that since the plaintiff's rights, based merely upon location, would not support an action of trespass to try title, the suit could be maintained against the surveyor only in the county of his residence. This contention was denied; the substance of the holding being that the real controversy was as to who had the superior right to the land, a controversy the venue of which was properly laid in the county where the land was situated; and that the surveyor was properly joined in order, in one action, to give full relief to protect the rights of plaintiff.

■ The clear deduction from these decisions is that where one has a right or claim against another, the full exercise or enjoyment of which is dependent upon some ministerial act of a public officer, it is proper to join such officer in an action to establish such right or claim, and in the one action obtain an adjudication of the right or claim and enforcement of the official duty necessary to protect it. Where, however, jurisdiction over the officer and over the adverse claimant does not exist in a single court, and adjudication of the controversy as to the adverse claimant is an essential prerequisite to jurisdiction to control official action, such controversy is maintainable against the adverse claimant alone in the court having jurisdiction of the subject matter. This is the precise situation we have in the instant case. Prior to the act of 1841 it is clear that this suit could have been maintained against all parties defendant in Cass county. After the passage of that act and before the passage of Art. 1735, the suit would have been maintainable against all defendants in Travis county, if the land had been situated in that county. After the passage of Art. 1735, it could not be maintained against the Commissioner except in the Supreme Court, and could not be maintained there because questions of fact were involved. It follows that it could be maintained in the district court against all defendants except the Commissioner. The only asserted answer to this reasoning is that the suit was in form one for mandamus; that the prayer for an accounting was merely for ancillary relief, and when the suit was dismissed as to the Commissioner there was nothing left; in fact there was nothing there prior to the dismissal, since the only cause of action asserted (one for mandamus) was not within the jurisdiction of the court. The flaw in this course of reasoning lies in the fact that it denies that the petition asserts a controversy against appellees calling for adjudication. This is not a correct analysis of the petition. After alleging every fact entitling him to a lease upon the land, appellant asserted that appellees were in possession without right, were trespassers, and were unlawfully extracting the oil. While the prayer did not specifically ask for an adjudication of appellees' rights or for remedial writs other than as to accounting, it did ask that appellees be required to show cause why the writ of mandamus should not issue. This portion of the prayer necessarily called in question appellees' claims to the mineral title to the land; since it was essential to issuance of the writ of mandamus that appellant's right to a mineral lease be superior to any right or claim of appellees. The awarding of the writ under the pleadings of appellant would be a complete bar to any claim appellees might have in the mineral title, if decreed by a court having jurisdiction to award the writ—and this, even without amendment of the prayer. It would do violence to elementary principles of reasoning to assert that a petition necessarily requiring an adjudication of a plaintiff's right as against some of the defendants if the specific relief prayed for against another defendant were granted, is wholly lacking in assertion of a cause of action against the former defendants merely because the court has no jurisdiction over the latter defendant and therefore could not grant the specific relief prayed for as to him.

■ Bearing in mind that the distinctions between law and equity, and common law forms of action have never been incorporated into our practice, that the factual allegations of plaintiff's petition, and not the prayer, determine the character of the cause of action asserted (33 Tex.Jur., p. 446, § 46), we hold that the factual allegations of the petition set forth the essential elements of a cause of

action against appellees alone, and independently of the asserted rights against the Land Commissioner; and consequently that the judgment of dismissal as to appellees for want of jurisdiction was improper.

The case of Kinney v. Bank, Tex.Civ. App., 288 S.W. 590, cited by appellees, has no application to the case at bar. There the action was brought in the district court against the Banking Commissioner alone for a writ of mandamus to compel the Commissioner to bring suit upon a claim of an insolvent bank or in the alternative to authorize plaintiff, a depositor in said bank, to bring the suit. The holding was that only the Supreme Court had jurisdiction to compel the Commissioner to perform an official duty, and the court had no power to authorize plaintiff to bring the suit. Manifestly these holdings left nothing in the case for adjudication, consequently it was properly dismissed and leave to amend denied. The distinction between the two cases is clear. Here the elements of a cause of action against appellees, over which the district court had jurisdiction, were alleged. The joinder of the Land Commissioner, over whom the court had no jurisdiction, did not detract from the power of the court to adjudicate the controversy, involved in the factual allegations, between appellant and appellees.

The contention that appellant's suit was in effect one against the State is predicated upon one of the holdings in DeGrazier v. Panell Oil Corp., Tex.Civ.App., 109 S.W.2d 1109. In support of that holding Colquitt v. Gulf Prod. Co., Tex.Com.App., 52 S.W.2d 235, is cited. The Colquitt Case does not support the holding. It was a suit to cancel on the ground of fraud a mineral lease executed under the relinquishment act. Clearly the State was a necessary party to such suit. Dismissal for want of jurisdiction of an application for writ of error in the DeGrazier Case constituted approval only of the judgment of the Court of Civil Appeals which was properly supported upon grounds other than that the State was a necessary party to the suit.

■■ From the earliest times the courts of this State have entertained suits between private individuals to adjudicate their rival claims to the public lands of the State, predicated upon the various legislative acts under which the State has alienated its lands. The fact that the legal title is still in the State or that the State's claim for purchase money has not been satisfied, or that the claimant has not performed every act essential to his right to demand a patent, has not constituted an impediment to his right to litigate his claim as against an adverse claimant. The interest of one complying with the alienation statutes has always been held sufficient to support an action against an adverse claimant. Prior to the adoption of the Revised Statutes, mere location was sufficient to support an action of trespass to try title; under the Revised Statutes both survey and location were made essential to such action. However, mere location was still held sufficient interest in land to support a suit against an adverse claimant, and compel a survey. Thomson v. Locke, above.

■ There is no essential difference in the disposition of its public lands between sales or grants to colonists, settlers, and purchasers, and development of the mineral resources through leases. The latter, for all practical purposes, constitute complete alienation of the State's mineral title, subject to the reserved royalties and the possibility of reverter. The policy of the State in authorizing such mineral leases is implicit in the statutes authorizing them. Certain duties in connection with the leasing are imposed upon the Land Commissioner and some other officers. These duties are mandatory and enforcible by mandamus in the proper forum, except as to discretionary matters lodged with the officials. The fact that the State may have an interest in the land has never been held to constitute an impediment to compelling the officials to perform purely ministerial duties enjoined by statute, even though the effect of such performance would be to divest the State of its title to or some interest in the land. And this has been the uniform holding where mandamus was sought in the Supreme Court to compel a ministerial act of the Land Commissioner in relation to such lands. It may not be exact to say that the act of the Land Commissioner or other official constitutes a divestiture of the State's title. It would probably be more accurate to say that the acts of the claimant in complying with statutory requirements in effect constitute the divestiture by virtue of the statute. Such compliance endows the claimant with power to assert his right or title against anyone claiming adversely to him, and to compel the performance of ministerial official duties essential to the per-

fection or enjoyment of such right or title. This subject was discussed at length in Camp v. Gulf Prod. Co., 122 Tex. 383, 61 S.W.2d 773. The action there was to compel the county surveyor to make a survey of land alleged to come within the provisions of the statutes governing the sale of public lands. The statute there involved expressly authorized the suit, which is not the case here. However, the situation is no different in principle, since the statute here involved expressly authorized leasing of the lands upon compliance with its terms, and the acts of the Commissioner enjoined by the statute can be compelled in the proper tribunal, the State's interest in the land constituting no barrier to such action. These principles were necessarily involved in the recent Supreme Court cases of Wintermann v. McDonald, 129 Tex. 275, 102 S.W.2d 167, 104 S.W.2d 4, and Caples v. Cole, 129 Tex. 370, 102 S.W.2d 173, 104 S.W.2d 3.

One other point is made in appellees' brief to the effect that the Land Commissioner's refusal to grant appellant a lease was predicated upon matters within the discretion of the Commissioner, and his refusal is not subject to judicial review. The record does not show the basis of such refusal, nor the facts upon which appellees' claims are rested. But, aside from this, the point urged does not go to the jurisdiction of the court over the general subject matter of the suit, but only to the merits of appellant's claim.

While the district court had jurisdiction of the suit, the venue was properly laid in Cass County.

The trial court's judgment is reversed and the cause remanded to that court with instructions to change the venue to Cass County.

Reversed and remanded with instructions.