**HUGHES v. RHODES et al.**

No. 14028.

Court of Civil Appeals of Texas. Fort Worth.

Feb. 16, 1940.

Rehearing Denied March 15, 1940.

W. E. Fitzgerald, of Wichita Falls, for appellant.

John D. McComb and J. P. Simpson, both of Jacksboro, Levy & Evans, of Fort Worth, and Harris & Martin, of Wichita Falls, for appellees.

BROWN, Justice.

Appellant, Everett Hughes, believing that there exists between the north boundary line of S. P. R. R. Company Survey No. 7, and the south boundary line of the R. N. Erwin Survey, in Jack County, Texas, what is commonly known as a "vacancy"; that is to say, a strip of unsurveyed and unsold public lands, had a survey made and filed his application for a mineral permit to issue to him on the tract, which is supposed to be about 15 acres. The Commissioner of the General Land Office of the State of Texas refused to issue such permit, and Hughes filed this suit in the district court of Jack County and made F. H. Rhodes, who claims to own the tract of land, W. H. Hammon, Herbert Oil Company, a corporation, and J. E. Kadane, defendants.

Hughes alleges that he is entitled to a mineral lease (on the lands in question) from the Commissioner of the General Land Office of the State of Texas, conferring upon him the exclusive right to prospect for and develop petroleum, natural gas and oil on the premises; that he has taken all of the steps required to secure such permit; that the tract involved constitutes a part of the unsurveyed land of the State of Texas, and is known as vacant land and subject to being leased.

He alleged that the defendants have gone upon the land and premises without legal authority and have taken possession of same without warrant of law, and are

using and appropriating the land to their own use and benefit; that they have leased and drilled for oil, gas and other minerals on the land, and are appropriating the rents, royalties, bonuses and oil and gas, produced from the land, to their own use and benefit, etc., and are therefore trespassing and will continue to trespass upon the land, and are excluding the plaintiff therefrom, to his damage and to the State of Texas and the Public Free School Fund, in the sum of $40,000; that the possession and appropriation of the land constitutes a cloud upon plaintiff's vested right in and to the oil, gas and a lease from the State, and militates against the plaintiff's right to have issued to him a mineral lease, "for the reason that said defendants by their operation, possession and use as aforesaid of said premises, have induced the Land Commissioner to refuse to issue to this plaintiff a mineral lease upon the land aforesaid and has resulted in a denial of said application."

Hughes prays: "That upon a hearing of this cause he be adjudged and decreed to have the right and title to a mineral lease from the State of Texas to prospect for and develop oil and natural gas on said land, as is provided under the statutes of the State of Texas, with reference to such mineral leases, and to have a decree by this court to the effect that said land is subject to the application of this plaintiff for a mineral lease under and by virtue of the Act aforesaid, and that said land be decreed to be vacant public school land of the State of Texas, and that this plaintiff be quieted in his right, title or interest vested in him by virtue of the matters and things herein pleaded, and for such other and further relief, general and special, in law or in equity, that he may show himself entitled to recover."

The defendant Rhodes filed a plea in abatement, the last paragraph of which asserts that the field notes of the alleged vacancy have not been approved and said permit has not been granted, and the plaintiff has not purchased a mineral lease upon the alleged vacancy and no lease has ever been issued to him, and that the facts, as shown in the plaintiff's petition, disclose that plaintiff has no cause of action against the defendant Rhodes, and if the plaintiff has any cause of action it is against the Land Commissioner, who is not made a party to the suit. This plea is followed in due order of pleading by the urging of a general demurrer.

The defendants Hammon and Herbert Oil Company likewise filed a plea in abatement, which elaborates upon the facts and matters mentioned in Rhodes' plea, and which plea is essentially the same as that of Rhodes. In due order of pleading these defendants urged a general demurrer to plaintiff's pleading.

The trial court overruled the pleas in abatement and the general demurrer, and due exceptions were taken to such ruling. The cause was tried to a jury, and, on the answers found, judgment was rendered for the defendants.

The defendant Kadane had filed a disclaimer.

The plaintiff has appealed from the judgment.

If the trial court should have sustained the pleas in abatement and the general demurrers urged, then such acts constitute fundamental error apparent on the face of the record.

It will be seen that appellant, as plaintiff, has not made the Land Commissioner of the State of Texas a party to this suit. He seeks no relief as against the State of Texas, or against the Land Commissioner of such State, whose duty it is to issue mineral leases on public lands, if, as and when an application for such lease is properly made and presented to him.

In fact, the plaintiff here alleges that the defendants, who are claiming title to the land and rights, as lessees of such claimant, have persuaded the State Land Commissioner to refuse him a lease on the lands, and that the Commissioner has refused to execute such lease.

With this situation staring us in the face, we do not believe that appellant's petition states a cause of action against the named defendants.

It appears to us that appellant is asking the trial court to determine for him an abstract question.

Appellant has no interest in the lands involved. He sought to acquire an interest by applying to the Land Commissioner of the State of Texas for a lease on the lands, on the theory that it is a part of the unsold, public domain. His application was denied and he now sues the person who claims to own the lands, and his lessees and those holding under them.

What character of judgment could he obtain, in this suit, against such persons?

Not having any vested interest superior to that of the persons whom he has sued, what character of decree could a court render in his favor? As we view the situation, none.

It is not contemplated that a litigant, before he obtains the relief he seeks, either should, or may, resort to more than one trial to settle the issues upon which he relies for recovery.

If appellant should obtain, in the trial court, some character of decree as against the defendants whom he has sued, what would he have? Obviously nothing.

After obtaining such a decree, if the Land Commissioner, who is not a party to the suit, again refuses to give appellant a lease on the lands, appellant could not take possession of the premises. He would have no vested right to do so, but would be compelled to resort to a mandamus proceeding to require the Land Commissioner to execute to him a mineral lease.

■ A litigant may not try his case—establish his rights—by piecemeal. Birdville Ind. School Dist. et al. v. Deen, Tex. Civ.App., 114 S.W.2d 628.

A decree to the effect that the trial court has found that the lands in question constitute a part of the unsold, public domain would not have the dignity of a judgment in favor of the State and against the defendants. The State is not a party to the suit and no judgment could be thus rendered, either for or against the State. Neither would such a decree have the dignity of a judgment for or against the Commissioner of the Land Office. The Commissioner is not a party to the suit, and no judgment could be thus rendered either for or against him.

We have diligently sought light on this new and interesting question, and we find only one case reported that even tends to shed any light on the matter.

We refer to the case of Hughes v. McDonald, Land Com'r, Tex.Civ.App., 122 S.W.2d 366.

In that case Hughes brought suit against the Land Commissioner of Texas, those who claimed to own the lands involved, and their lessees and the parties holding under them. The suit was instituted under circumstances similar to those in the instant case. Hughes sought to prove that the lands involved were a part of the unsold, public domain and he alleged that he had complied with the law requisite to his

right to a lease from the Commissioner and he prayed for a writ of mandamus to issue requiring the Commissioner to issue to him the lease for which he had made application, and necessarily for judgment against the other parties defendant establishing his rights as against their respective claims.

In that suit the Commissioner urged a plea to the jurisdiction of the court, relying upon the provisions of Art. 1735, R.C.S. Some of the other defendants filed pleas to the jurisdiction, and some filed pleas of privilege seeking to change the venue to Cass County, in which county the land lies.

Hughes dismissed as to the Land Commissioner, and the trial court dismissed such defendant.

The trial court then found that some of the pleas to the jurisdiction and of personal privilege were well taken, but instead of ordering the cause transferred to Cass County, the trial court dismissed the suit.

The case was appealed to the Court of Civil Appeals for the Austin District (it was tried in a Travis County district court), and the Court of Civil Appeals reversed the judgment and remanded the cause with instructions to change the venue to Cass County.

Application for a writ of error was made by the parties appellee, who were the defendants below, after plaintiff dismissed as to the Land Commissioner, and the Supreme Court granted a writ of error, noting that it was granted on the second assignment of error. That assignment of error asserts that the Court of Civil Appeals erred in holding that the factual allegations of Hughes' petition set forth essential elements of a cause of action against the appellees alone and independently of the rights asserted against the Land Commissioner.

Thus it appears that the Supreme Court, in granting the writ, was then of the opinion that, in such a suit as the one before us, the petition does not state a cause of action. The Supreme Court has not reached the above-styled suit. The writ of error was granted on April 5th, 1939.

We hold that the trial court erred in overruling the pleas in abatement.

Believing that the pleas in abatement are well taken, it is not necessary for us to pass upon the ruling of the trial court in overruling the general demurrers. In

the absence of a plea in abatement, the demurrers should have been sustained.

For the reasons given, the judgment of the district court is reversed and the cause is remanded, with instructions to that court to sustain the pleas in abatement filed by the several defendants, and to dismiss the suit.