**DANIEL et al. v. RICHCREEK et al.**

No. 8943.

Court of Civil Appeals of Texas. Austin.

Dec. 4, 1940.

Rehearing Denied Dec. 31, 1940.

Gerald C. Mann, Atty. Gen., and A. S. Rollins, Asst. Atty. Gen., for plaintiff in error.

F. L. Kuykendall and R. J. Long, both of Austin, for F. O. Richcreek, and others.

Harry S. Pollard, of Austin, for Bob J. Lyles, Receiver.

McCLENDON, Justice.

This case was formerly before us in an appeal from an ex parte interlocutory order appointing a receiver. 118 S.W.2d 935. The instant appeal (by writ of error) is by the State Comptroller and Treasurer (other defendants having been dismissed) from a final judgment decreeing the fund in suit (the unexpended balance, $10,408.49, of the "Texas Racing Commission Jockey Fund" on deposit in the State Treasury "suspense cash account" under Vernon's Ann.Civ.St. Art. 4388) to belong to appellees and others contributing to that fund; appointing a receiver of the fund; and ordering its transfer by appellants to the receiver. Some days after entry of the judgment, apparently under advice of the Attorney General's Department, the Comptroller drew a warrant upon the Treasurer in favor of the receiver covering the fund; the warrant was cashed; and the fund deposited by the receiver to his credit as such in an Austin bank. This occurred in the last few days of the administration of the then Attorney General. When his successor took office he promptly filed a motion for rehearing, which was disallowed; whereupon this appeal was instituted.

Appellees have moved to dismiss the appeal upon the ground, among others, that appellants who are parties to the litigation

only in their official capacities, have no justiciable interest therein, because the fund in suit is not a public one and does not belong to the state. Since we are sustaining this ground of the motion, the others need not be noted.

The following statement of the salient facts will suffice for our present purposes: In 1933 the legislature legalized horse racing under what is commonly known as the pari-mutuel plan, and created a board denominated "Texas Racing Commission" to administer the legislation. The act provided for license fees, consisting of stated amounts plus certain percentages of receipts, to be paid by those conducting races under the act, which fees were required to be paid into the State Treasury and there deposited to a special account. These fees were "in lieu of all other or further excise or occupation taxes to the State of Texas, or any county, city, town, or political subdivision thereof." Expenses of the Commission were to be paid from this fund and were in no event to become a charge against the general revenue; the fund to be "prorated" if it proved insufficient to meet these charges. Any remaining balance was allocated to other purposes. The fund in suit was derived from license fees collected from jockeys and other participants in races prescribed by Rule No. 152 of the Commission, promulgated under the assumed authority of the following provision of the act:

"The Racing Commission shall have the power, and it shall be its duty, to prescribe and enforce reasonable rules and regulations, reasonable restrictions and conditions under which all horse races and exhibitions of riding horses are held under this Act; likewise prescribe and enforce rules governing the conduct of all persons who engage in or carry on the racing or such exhibitions of horses. The Commission shall have power to exclude from participation in such races or exhibitions any person or persons who omit, fail or refuse to comply with the reasonable rules, regulations, restrictions and conditions prescribed by said Commission, and to impose as a penalty for such omission, failure or refusal, the denial of the right of such persons to conduct or participate in such races or exhibitions."

This rule (152) required payment of license fees ranging from one to ten dollars as prerequisite to engaging in various activities on the licensed tracks. Subdivisions (4), (5) and (6) provided:

"(4) Money received from these license fees is to be held and regarded as a voluntary subscription or contribution by applicant to be a fund created by the Texas Racing Commission for the purpose, among other things, of caring for jockeys injured while in the discharge of their duties, upon tracks under the jurisdiction of this Commission. Distribution and expenditures of the funds thus created to be wholly within the direction of the Texas Racing Commission, part of which may be used for the purpose of defraying any expense incident to its administration or for such other purpose as the Commission may deem expedient.

"(5) The right of any licensee to participate in said fund shall cease upon expiration or revocation of his license, except for injury received prior to such expiration or revocation.

"(6) The Commission may, in its discretion, without assignment of any reason for its action, deny to any applicant the right of participation in said fund, and in no event, shall it be required to render an accounting to contributors to said fund nor to any other person or agency."

The act creating the Commission and legalizing racing under the pari-mutuel plan was repealed effective September 24, 1937. S.B. No. 1, Chap. 1, p. 1737, Laws 1st C.S. 45th Leg. Vernon's Ann.P.C. arts. 645, 648—1, 648—2, 655a. The fund in suit was then deposited in the Treasury by the Commission as already stated.

■ It is quite manifest, we think, that if the fund is not public in character and if the state has no interest therein, the appellants in their official capacity have now no duty to perform in relation to it since they have voluntarily surrendered its custody to the receiver under decree of a court of competent jurisdiction. Under this view it will not be necessary to consider what would be the effect of such voluntary surrender of possession, if the fund were a public one. It may be of interest to note that in 1934 an assistant attorney general gave to an inquiring county attorney an opinion to the effect that the Commission had the power under the above quoted provision of the act to pass Rule 152 requiring jockeys and other participants in racing to pay the prescribed fees. This holding was rested upon the asserted fact that similar rules had been promulgated in some other states by boards acting under like authority, and the legislature must have

had before it these statutes and rules thereunder. March 3, 1936, this opinion was overruled by the department in an opinion signed by the Attorney General after "having been considered in conference." In substance, this opinion held that the powers conferred in the above quoted provision of the act, while very broad and general in character, did not include that of assessing a tax or fee as a condition precedent to issuing a license to those participating in racing, and that the state had no interest whatever in the fund. We have no doubt of the correctness of this view. Conceding, arguendo, the power of the legislature to delegate to the Commission legal authority to prescribe license fees, it is perfectly clear that no such authority was attempted to be delegated. The authority of the Commission to make rules and regulations was expressly limited to "reasonable restrictions and conditions" with reference to holding races under the act and the conduct of participants in such races. There is no intimation of any delegation of authority to collect any license or other fees from anyone except those specifically prescribed in the act itself and required to be paid into the State Treasury for the primary purpose of defraying the expenses of administration of the act. Subdivision (4) of Rule 152 clearly shows that the purpose of the Commission in prescribing these fees was one wholly outside the purview of the act,—namely, to raise an insurance or benefit fund in the interest of jockeys, trainers, and others paying the fees. It is true the rule provided that the Commission might devote the fund to such other purposes as it might choose, and was not required to account to anyone in regard to its disposition. This, however, did not change the character of the fund so long as it was not diverted to other purposes; and when the act was repealed and the Commission abolished, the unexpended balance in the fund retained its original character defined in Sub. (4), as money received from voluntary contributions to a fund created primarily, at least, for the benefit of the contributors; it was expressly to be so "held and regarded." Under no reasonable theory can the state be considered as having any interest in the unexpended balance of this fund.

If the Commission, acting under a presumed authority, had attempted to levy an excise tax or privilege fee for some public purpose connected with the act or otherwise, the question then would arise whether such taxes or fees might thereafter be recovered by those voluntarily paying them. It is at least plausible that recovery would be denied under the provisions of Art. 4388, since the payments were not (by those making them) deposited in the treasury suspense account under protest as provided in that article. See Rainey v. Malone, Tex.Civ.App., 141 S.W.2d 713. The case at bar, however, presents no analogous situation. The fees were collected solely as voluntary contributions to a fund in which the contributors had an interest and in which the state or public had none. The district court had the general power to appoint a receiver to distribute the unexpended balance of the fund among those whom it might judicially determine to be its rightful owners; and appellants having surrendered possession of the fund to the receiver in obedience to the decree, their respective duties and responsibilities in regard to it, of whatever character they might have been up to that time, ceased altogether and their interest in the subject matter of the suit was at an end. Phillips v. Perue, 111 Tex. 112, 229 S.W. 849.

The motion is granted and the appeal dismissed.