## AMERICAN NAT. BANK OF AUSTIN, TEX., v. SHEPPARD et al.

### No. 9386.

Court of Civil Appeals of Texas. Austin.
Oct. 27, 1943.

Rehearing Denied Nov. 17, 1943.

Cofer & Cofer, of Austin, for appellant.

Gerald C. Mann, Atty. Gen., and R. W. Fairchild and Ocie Speer, Asst. Attys. Gen., for appellees.

McCLENDON, Chief Justice.

Appeal by the Bank (American National Bank of Austin, Texas) from a final judgment sustaining a plea to the jurisdiction and dismissing a suit, brought by the Bank against the State Comptroller, State Treasurer, and Attorney General, to enjoin each of them, "from further interfering with and preventing the payment of State General Fund Warrant No. 196,-172c." The warrant was dated June 12, 1941, and had been issued by the Comptroller, signed by the Treasurer, and delivered to the Bank under an appropriation in S.B. 115, Ch. 473, p. 758, Gen.Laws, 47th Leg. (1941). August 5, 1941, before the warrant was presented to the Treasurer for payment, the Comptroller addressed a letter to the Treasurer, requesting that he "place stop payment against" the warrant. This letter copied in full a letter from the Attorney General to the Comptroller (in response to a letter, dated July 30, 1941, of the latter to the former requesting an opin-

ion upon the validity of S.B. 115), in which the former held S.B. 115 unconstitutional. The plea to the jurisdiction was grounded upon the proposition (substantially stated) that the relief sought, though restraining in form, was mandatory in substance, in that it was tantamount to a mandate to the Treasurer to pay (or register for payment in its proper order) the warrant, jurisdiction to award such relief being vested exclusively in the Supreme Court by Art. 1735, R.C.S. The correctness of this proposition presents the controlling question in the case.

The following brief statement of the pertinent facts, gleaned from the record and other sources of judicial knowledge, will suffice to a clear understanding of the above question. The general appropriation bill for the A. & M. (Agricultural & Mechanical College) for the fiscal year ending August 31, 1917, contained the item, "For a college auditorium .......... $1,-000,000," which amount was reduced by the Governor (whether validly or not does not concern us here) to $100,000 (p. 104, c. 32, Gen.Laws, 1st C.S. 34th Leg. 1915). Contract was let for erection of the building, but before its completion and after warrants had been issued for $91,138.38 the contractors defaulted and to complete the building the Bank loaned the Regents of A. & M. approximately $30,000. In 1937 (Gen. Laws, R.S. 45th Leg., c. 440, p. 919), the Legislature appropriated $8,861.62 "to reimburse" the Bank for "money advanced" on this account, with the proviso, however, that before payment the claim should "have the approval of the State Comptroller, the State Auditor and Efficiency Expert, and the Attorney General." King (the Auditor and Efficiency Expert) refused approval; whereupon the Bank, in a mandamus suit in the district court, obtained a judgment requiring him to do so. Appeal from that judgment was dismissed by this .court on the ground that notice of appeal had not been properly given. King v. American Nat. Bank, Tex.Civ.App., 131 S.W.2d 748. January 27, 1940, the Attorney General, in an opinion reviewing the history of the claim, advised the Comptroller that the judgment in the King case was not binding on the State, and that the claim and appropriation for its payment were invalid on various specified constitutional grounds. S.B. 115, passed at the next session of the Legislature, reappropriated the sum, reciting that the claim was "a just obligation" and had been "approved by the

final judgment" in the King case, "which judgment is conclusive upon the State of Texas and all of its officials." Issuance of the warrant and stop payment order ensued.

It is the contention of the Bank that the judgment in the King case was binding on the State, and that it was so enacted by the Legislature in S.B. 115; that all of the alleged acts of the three officials were illegal and violative of its rights: that of the Attorney General in advising the Comptroller that the appropriation was invalid; that of the Comptroller in directing the Treasurer "to place stop payment against" the warrant; that of the Treasurer in respecting the stop payment order; and those of all three officials in "continuing to give effect to said illegal stop payment order, and so depriving plaintiff of its rights to have the same (the warrant) paid, or else numbered and classified in due course as required" by statute.

It will be observed that all. of the acts sought to be enjoined have already been performed and could not therefore be enjoined, except those of "continuing to give effect" to those already done. Just what affirmative acts might be included in this "continuing to give effect" is not disclosed. To undo what has already been done necessarily requires affirmative action; that of the Attorney General in withdrawing his opinion; that of the Comptroller in withdrawing the stop order; and that of the Treasurer in not "respecting" such action. Jurisdiction to compel any of these acts is vested exclusively in the Supreme Court. If these three officials and their successors to the end of time should simply refuse to act in respect to the subject, and do nothing not already done before this suit was filed, the Bank would not be one step nearer collecting the warrant than it was the day it filed suit.

It is obvious that the only relief which would in any degree promote the Bank's interest is mandatory and not restraining. The warrant has been issued and the only impediment to its payment is the refusal of the Treasurer to pay or to do certain things ("number, classify," etc.) incident to its payment in due course. Neither payment nor any of these acts can be compelled except by the Supreme Court. Conceding, arguendo, that the King case judgment is res judicata of the validity of S.B. 115 (an issue not within our province in this appeal to decide), acts on the part

of the Treasurer essential to payment of the warrant are purely ministerial in character, the compulsion of which is in no way trammeled by any acts, whether of omission or of commission, past or prospective, of the Attorney General or Comptroller. But even if there were such latter acts, their impediment could be removed by the Supreme Court by mandamus or, if need be, by restraint as ancillary to mandamus against the Treasurer. It may not be inappropriate to observe, in passing, that it would be a strange doctrine that would warrant restraining the Attorney General from giving advisory opinions to heads of State departments, a duty enjoined upon him by statute (Art. 4399, R.C.S.). While the petition has been drawn, with obvious meticulous care, to avoid the semblance of seeking mandatory relief, in essence and effect it presents no other objective. To restrain nonaction is essentially to compel action. This was expressly held in State Highway Comm. v. Tengg, Tex.Civ.App., 57 S.W.2d 929. We hold the trial court correct in sustaining the plea to the jurisdiction and dismissing the case.

■■ One other question (one of practice) remains: correctness of the trial court's refusal of the Bank's request for leave to amend after the jurisdiction plea was sustained. The judgment was rendered December 14, 1942, and the term of court adjourned January 30, 1943. No amended pleading was tendered and the bill of exceptions taken to the court's ruling (filed December 29, 1942) does not intimate, nor is there suggestion in the record or brief, in what way the petition might be amended so as to show jurisdiction in the district court. The Bank contends that the plea was one in form only, and was in essence a demurrer or exception; because it asserted no fact but urged only that the petition showed want of jurisdiction on its face; and that the right to amend, after sustaining a demurrer, is absolute and not discretionary with the court. Even so. But there is another rule of practice, of equal dignity, which governs the instant situation. Rule 434, T.R.C.P., contains the following, copied verbatim from prior C.C. A. Rule 62a: " * * * no judgment shall be reversed on appeal and a new trial ordered in any cause on the ground that the trial court has committed an error of law in the course of the trial, unless the appellate court shall be of the opinion that the error complained of amounted to such

a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case."

This rule "enlarged" the doctrine of harmless error "so as to cast upon the complaining party the burden of showing at least that the error probably resulted to his prejudice." Golden v. Odiorne, 112 Tex. 544, 249 S.W. 822, 823. Not only was this burden not met, but no theory is suggested under which denial of the right to amend could be prejudicial.

The trial court's judgment is affirmed.

Affirmed.

## On Motions for Rehearing and to Certify.

■ In view of our holding that the relief sought by the Bank is in fact mandatory and not restrictive, and that therefore the Supreme Court only has jurisdiction of the controversy under Art. 1735, R.C.S., the Bank now urges for the first time (in addition to assignments upon which its appeal was based and which we overruled) that Art. 1735, in so far as the jurisdiction therein conferred upon the Supreme Court is exclusive, is unconstitutional, in that it thereby "diminishes the full and plenary jurisdiction of the District Court to grant a writ of mandate and mandatory writs of injunction" conferred upon that court by Art. V, Sec. 8, of the State Constitution, Vernon's Ann.St. We are also asked to certify this question to the Supreme Court.

We will consider briefly this question. It has not been adjudicated in any previous decision, so far as we have been able to find.

In addition to the Tengg case, the exclusive feature of the article has been enforced in two other cases, Lane v. Mayfield, Tex.Civ.App., 158 S.W. 223, by the Dallas court, and Wertheimer v. Walker, Tex. Civ.App., 96 S.W.2d 831, by this court. In none of these three cases was the constitutional question raised, or writ of error sought.

That question was raised in the following two cases: Kaufman County v. McGaughey, 3 Tex.Civ.App. 655, 21 S.W. 261, error refused, Judge Key, then (1893) Associate Justice of this court, writing; and Daniel v. Richcreek, Tex.Civ.App., 118 S. W.2d 935, no writ of error sought. In neither of these cases was the question necessary to the decision. In the McGaughey case [3 Tex.Civ.App. 655, 21 S.

W. 262], the opinion on this point reads: "There is much force in this contention, but it is not deemed necessary to pass upon the constitutionality of this statute, because, in our opinion, it has no application to the facts of this case."

The Richcreek case was an appeal from an interlocutory order appointing a receiver of the unexpended balance of the "Texas Racing Commission Jockey Fund," which had been deposited by the Commission in the treasury suspense account. The order also directed the treasurer to deliver the fund to the receiver. The order was set aside on several grounds, among them that the receivership was premature in that the status of the fund had not been determined, following on this point Ex parte Stephens, 100 Tex. 107, 94 S.W. 327. The precise constitutional question we have here, which was squarely raised and elaborately briefed, was thus referred to in the opinion [118 S.W.2d 938]: "This question appears to be one of first impression. It was not raised in any of the above cited cases [Tengg and Wertheimer. cases and Crowell v. Terrell, Tex.Civ.App., 250 S.W. 252, error refused]." No opinion was expressed upon the question.

In Hughes v. McDonald, Tex.Civ.App., 122 S.W.2d 366, 367, 369, this court said: "In Daniel v. Richcreek, Tex.Civ.App., 118 S.W.2d 935, the constitutionality of Art. 1735, in so far as the jurisdiction therein conferred upon the Supreme Court was exclusive, was challenged on the ground that it curtailed the constitutionally conferred jurisdiction of the district court. The point was not essential to a proper disposition of that case and was therefore not decided. The point was not raised in prior decisions, the validity of the statute being assumed, and only its application being adjudicated. All parties concede the validity of the statute; and our decision, for the purposes of this case, is predicated upon that concession."

The original jurisdiction conferred upon the Supreme Court in Art. 1735 derives its constitutional sanction from that portion of Art. V, Sec. 3, reading: "The Legislature may confer original jurisdiction on the Supreme Court to issue writs of quo warranto and mandamus in such cases as may be specified, except as against the Governor of the State."

The portion of Art. V, § 8, here involved, reads: " * * * said court and the judges thereof, shall have power to issue writs of * * * mandamus, * * * and all writs necessary to enforce their jurisdiction."

This language is general, unlimited, and, if it stood alone, might be regarded as exclusive. The legislative authority conferred in Art. V, § 3, on the other hand, is specific: limited to "specified" cases. The Legislature must determine if and what cases of the general character (quo warranto or mandamus) may be tried originally in the Supreme Court; and while no limitations upon the legislative discretion are prescribed, it may be assumed that some reasonable basis must exist for conferring this extraordinary jurisdiction upon the Supreme Court in the cases "specified." See Love v. Wilcox, 119 Tex. 256, 28 S.W. 2d 515, 70 A.L.R. 1484, for discussion and authorities. To this extent, perhaps, the legislative discretion is subject to judicial review. There is nothing in the wording of Art. V, § 3, whether considered alone, or in conjunction with Art. V, § 8, that militates against authority to make exclusive the jurisdiction therein authorized to be conferred in such particular "specified" cases as the Legislature may deem appropriate or advisable. And certainly many cogent considerations might be advanced for limiting in the Supreme Court original jurisdiction in cases seeking to compel the performance of asserted official duties by "officers of the executive departments of the government of this State." The writ had been so used in district court cases from the earliest times. See Hughes case, above, and the limitation of original jurisdiction to the Supreme Court was enacted after long experience of district court jurisdiction. Art. 1735 and its predecessors in this regard (Art. 5732, R.C.S.1911 and Art. 4861, R.C.S.1895) was originally passed in 1881 (Acts 1881, p. 7, Sec. 4). During these years the validity of its exclusive feature has been rarely challenged, and then only in cases where its involvement was unessential; and this feature has been uniformly enforced whenever appropriately invoked; and correctly so we think and hold, even had the constitutional question been raised.

■ Upon the motion to certify this question to the Supreme Court: Jurisdiction of this court of this case is not final and the Supreme Court's jurisdiction may be invoked by writ of error. Absent (as here) some special reason which would

seem to demand that procedure, the long-established policy of this court is not to certify. Ladd v. Yett, Tex.Civ.App., 273 S.W. 1006.

Both motions are overruled.

Motions overruled.